# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Barzel Industries Inc., et al., | Case No. 09-13204 (CSS) |
| Debtors.[1] | (Jointly Administered)<br>Hearing Date: October 9, 2009 at 9:00 a.m.<br>Objection Deadline: October 2, 2009 at 4:00 p.m. |

## APPLICATION OF THE DEBTORS TO RETAIN AND EMPLOY HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS FINANCIAL ADVISORS

The above-captioned debtors and debtors in possession (the "Debtors") hereby apply to the Court for entry of an order pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") seeking the entry of an order authorizing the Debtors to retain and employ the consulting firm Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey") nunc pro tunc as of the September 15, 2009 (the "Petition Date") under the terms of the letter agreement dated May 2, 2009 and the amendment to the letter agreement dated May 22, 2009 (collectively the "Engagement Letter"), attached to the Turnbull Declaration (defined below) as Exhibit 1. In support of this Application, the Debtors rely upon and fully incorporate by reference the Declaration of Karen Narwold in Support of Chapter 11 Petitions and First Day Pleadings (the "Narwold Declaration") and submit the Declaration of Andrew Turnbull (the "Turnbull

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Barzel Industries Inc. (0836), Barzel Holdings Inc. (1107), Barzel Finco Inc. (1010), Barzel Industries U.S. Inc. (6382), American Steel and Aluminum Corporation (2435), Nova Tube and Steel, Inc. (1790), Novamerican Tube Holdings, Inc. (3740) and Nova Tube Indiana, LLC (8275).

Declaration"), attached hereto as Exhibit A. In further support of the Application, the Debtors respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested in this Application are section 327(a) and 328 of the Bankruptcy Code. Such relief is also warranted under Bankruptcy Rule 2014(a) and Local Rule 2014-1.

## BACKGROUND

4. On September 15, 2009 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Narwold Declaration, filed on the Petition Date and fully incorporated herein by reference.[2]

5. The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1008.

6. No official committee of unsecured creditors has yet been appointed in these chapter 11 cases.

## RELIEF REQUESTED

7. By this Application, the Debtors seek entry of an order authorizing them to employ Houlihan Lokey as their financial advisors, for the purpose of advising the Debtors during

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Narwold Declaration.

all phases of these chapter 11 cases, pursuant to the terms of the Engagement Letter[3] and granting a waiver of compliance with the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested herein.

## BASIS FOR RELIEF REQUESTED

### A. The Debtors' Desire to Retain Houlihan Lokey

8. Prior to the Petition Date, the Debtors experienced, and continue to experience, financial difficulties that culminated in the filing of these chapter 11 cases. The Debtors have determined, in the exercise of their business judgment, that the size of their business operations, and the complexity of the financial difficulties attendant upon operations of such scope, require them to employ experienced professionals to render financial advisory services in connection with their chapter 11 cases.

### B. Houlihan Lokey's Qualifications

9. The Debtors have selected Houlihan Lokey as their financial advisors because the Debtors believe that Houlihan Lokey possesses: (a) diverse experience, knowledge and reputation in the restructuring field; (b) an understanding of the issues involved in chapter 11 cases; and (c) the resources and qualifications to provide the financial advisory services that will be required in these chapter 11 cases.

10. Houlihan Lokey is an international investment banking/financial advisory firm, with 14 offices worldwide and more than 800 employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. Houlihan Lokey is one of the leading advisors and investment bankers to troubled companies, both inside and outside of bankruptcy, as well as to

---

[3] The Engagement Letter is incorporated herein by reference.

their bondholders, banks, other secured and unsecured creditors, Official Creditor Committees, acquirers, equity sponsors and other parties-in-interest involved with financially challenged companies. Houlihan Lokey's Financial Restructuring Group has over 160 professionals worldwide dedicated to such engagements and the Industrials Group has over 25 professionals. These two groups will be collaboratively providing the agreed upon restructuring and other financial advisory services to the Debtors.

11. Houlihan Lokey's Financial Restructuring Group has advised on over 500 transactions, valued in excess of $1.25 trillion, over the past ten years. Houlihan Lokey has served as a financial advisor in some of the largest and most complex restructuring matters in the United States, including serving as the financial advisor to the debtors in the chapter 11 proceedings of, among others, Buffets Holdings, Inc., XO Communications, Inc., NII Holdings, Inc. (Nextel International), J.L. French Automotive Castings, Inc., Covad Communications, Inc. and AmeriServe Food Distribution, Inc., and as the financial advisor to the official creditors' committees in the chapter 11 proceedings of Worldcom, Inc., Enron Corp., Williams Communications Group, Inc., Refco Inc., Mirant, and NRG Energy Corp.

12. In light of the size and complexity of the chapter 11 cases, the Debtors require the services of a seasoned and experienced financial advisor, and one that is familiar with the Debtors' businesses and operations and the chapter 11 process. The Debtors believe that Houlihan Lokey is well-qualified to provide its services in a cost-effective, efficient, and timely manner. Houlihan Lokey will coordinate with the other retained professionals in the chapter 11 cases to eliminate unnecessary duplication and overlap of work. The Debtors submit that the employment and retention of Houlihan Lokey would be in the best interest of the Debtors, their estates and their creditors.

47658/0001-5952203v3

13. Houlihan Lokey was first engaged by the Debtors in May 2009 to provide financial and strategic advice in connection with a potential restructuring, sale and/or refinancing. Houlihan Lokey's role at the time included, among other things, (a) analyzing financial data and other aspects of the Debtors' operations, (b) assisting the Debtors in preparing financial forecasts, (c) participating in negotiations with certain creditors, lessors and lenders and (d) marketing the Debtors' assets for sale. To date Houlihan Lokey has conducted an extensive sale process that has led to the Debtors' entry into an asset purchase agreement (the "Stalking Horse Agreement") for the sale of substantially all of the Debtors' assets.

C. **Services to be Provided by Houlihan Lokey**

14. The Debtors contemplate that Houlihan Lokey will assist in:

    a. developing, preparing and distributing selected information, documents and other materials in an effort to create interest in and to consummate any Transaction(s), including, if appropriate, advising the Debtors in the preparation of an offering memorandum;

    b. soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

    c. developing, structuring, negotiating and implementing any Transaction(s), including participating as an advisor of the Debtors in negotiations with creditors and other parties involved in any Transaction(s);

    d. valuing the Debtors and/or, as appropriate, of the Debtors' non-real estate assets or operations;

e. providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

f. advising and attending meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties; and

g. providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Debtors.

### D. Disclosure Concerning Disinterestedness

15. In reliance on the Turnbull Declaration, the Debtors believe that, except as set forth in the Turnbull Declaration, (a) Houlihan Lokey has no connection with the Debtors, their creditors, the Office of the U.S. Trustee, any person employed in the office of the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; (b) Houlihan Lokey is not a creditor, equity security holder or insider of the Debtors; (c) Houlihan Lokey is not and was not, within two years of the Petition Date, a director, officer or employee of the Debtors; and (d) Houlihan Lokey does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, the Debtors or for any other reason.

16. Houlihan Lokey conducted a review of its professional contacts for all entities listed on Schedule 1 of the Turnbull Declaration. The firm's review, completed under the supervision of the firm's compliance department, consisted of queries of an internal computer database containing names of individuals and entities that are present or recent and former clients of Houlihan Lokey in order to identify potential relationships. A summary of such present or

-6-

47658/0001-5952203v3

recent representation that Houlihan Lokey was able to locate using its reasonable efforts is reflected in Schedule 2 to the Turnbull Declaration.

17. Further, as part of its diverse practice, Houlihan Lokey appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtor's case. Also, Houlihan Lokey has performed in the past, and may perform in the future, financial advisory and investment banking services for various attorneys and law firms in the legal community, and Houlihan Lokey and its employees have been represented by several attorneys and law firms in the legal community, some of whom are, may be or may become involved in these proceedings. In addition, Houlihan Lokey has in the past, may currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtors and these cases. Based upon the Turnbull Declaration, none of these business relationships create interests materially adverse to the Debtors or any matters upon which Houlihan Lokey is to be employed, and none are in connection with this case.

18. Houlihan Lokey researched its client database to determine its connections (if any) with the following entities:

(a) The Debtors and their affiliates;
(b) The Debtors' shareholders holding 5% more of the Debtors' equity securities;
(c) The Debtors' officers and directors, and their business affiliations;
(d) The Officers and directors of the Debtors' non-debtor affiliates;
(e) The Debtors' professionals;
(f) The Debtors' financing providers;
(g) The Lenders;
(h) Other general unsecured creditors on the top consolidated creditor list;

    (i)  The United States Bankruptcy Judges for the District of Delaware; and

    (j)  The U.S. Trustee.

  19.  Further, in accordance with section 504 of the Bankruptcy Code, Houlihan Lokey has no agreement or understanding with any other entity (other than employees of Houlihan Lokey), for the sharing of compensation received or to be received for services rendered in connection with these chapter 11 cases.

  20.  Accordingly, the Debtors believe that Houlihan Lokey is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. Moreover, the Debtors believe that the retention and employment of Houlihan Lokey is necessary and in the best interests of the Debtors and their estates.

### E. Compensation Structure

  21.  As described more fully in the Engagement Letter, Houlihan Lokey will be entitled to receive, as compensation for its services:[4]

   (a)  ***Monthly Fee.*** A monthly fee of $165,000;

   (b)  ***Restructuring Fee.*** Upon the entry of an order confirming a plan of reorganization under chapter 11 of the Bankruptcy Code, Houlihan Lokey shall earn a cash fee of (1) $2,750,000 if the Restructuring Transaction occurs in conjunction with a Financing Transaction in which a majority of the funding is provided by investors who are not Identified Investors or (2) $1,000,000 if such Restructuring Transaction does not occur in conjunction with a Financing Transaction as described in clause (b)(1).

   (c)  ***Sale Fee.*** Upon the closing of each Sale Transaction, Houlihan Lokey shall earn a cash fee based on the Aggregate Gross Consideration ("AGC") immediately and directly paid from the gross sale proceeds of the Sale Transaction and calculated as follows:

    (1) For AGC up to $150 million Houlihan Lokey will be entitled to the greater of $2 million and 2% of the AGC
    (2) For AGC from $150 to $200 million, Houlihan Lokey will be entitled to the compensation in (c)(1) above plus 3.5% of such incremental AGC.

---

[4] The defined terms in this paragraph shall be as defined in the Engagement Letter.

(3)  For AGC above $200 million, Houlihan Lokey will be entitled to the compensation in (c)(1 and 2) above plus 5% of such incremental AGC.

(d) **_Financing Fee._** Upon the closing of each Financing Transaction, Houlihan Lokey shall earn a cash fee based on the gross proceeds of such Financing Transaction immediately and directly paid from the gross proceeds of the Financing Transaction and calculated as follows:

(1)  2% of gross proceeds for any indebtedness raised or unconditionally committed that is senior to the Company's other debt and secured by a first priority lien and unsubordinated with respect to both lien priority and payment to any other obligations of the Company (other than debtor in possession financing),

(2)  3% of gross proceeds for any indebtedness raised or unconditionally committed that is secured by a lien (other than a first lien), is unsecured and/or subordinated and

(3)  6% of gross proceeds of all equity or equity-linked securities placed or unconditionally committed.

(4)  Houlihan Lokey shall earn a Financing Transaction Fee for any debtor in possession financing that is raised (from persons other than Identified Investors) of $1,000,000 (in lieu of any other Financing Transaction Fee with respect to such debtor in possession financing). The Financing Transaction Fee, with specific exceptions, shall be subject to a $1,000,000 Minimum Financing Transaction Fee.

(c) **_Crediting._** From and after payment of third Monthly Fee, then 50% of the Monthly Fees received by Houlihan Lokey and approved by a final order of the Bankruptcy Court will be credited once against any Restructuring Fee described in (b)(1), Sale Fee or Financing Fee provided, that such fee cannot be reduced below zero. Additionally, from and after payment of Monthly Fees for the period six months after the Effective Date, 50% of any Monthly Fee shall be credited once against any Restructuring Transaction Fee payable under (b)(2) provided, that such fee cannot be reduced below zero.

(d) **_Expenses._** Reimbursement for reasonable out-of-pocket expenses incurred from time to time in connection with its services.

22. Additionally, as set forth in the Engagement Letter, the Debtors shall indemnify and hold Houlihan Lokey harmless from and against any and all losses, claims, damages or liabilities in connection with the engagement, except to the extent they arise as a result of any gross negligence or willful misconduct on the part of Houlihan Lokey in the performance of its services.

23. The Debtors and Houlihan Lokey believe that the indemnification provisions in the Engagement Letter are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 proceedings. See, e.g., In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 18, 2005) (order authorizing retention of Miller Buckfire on similar terms); In re Comdisco, Inc., Case No. 02-C-1174 (N.D. Ill. Sep. 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors); In re United Artists Theatre Co., Case No. 00-3514, (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey by debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000). The indemnification provisions are similar to other indemnification provisions that have been approved by bankruptcy courts in this and other districts. See, e.g., In re Burlington Indus., Inc., Case No. 01-11282 (RJN) (Bankr.D. Del. May 21, 2003) (order authorizing retention of Miller Buckfire on similar terms); In re PC Landing Corp., Case No. 02-12086 (PJW) (Bankr. D. Del. Oct. 10, 2002) (same); In re Metrocall, Inc., Case No. 02-11579 (RB) (Bankr. D. Del. Jul. 8, 2002) (order authorizing retention of Lazard Freres & Co. LLC under similar terms); In re Kaiser Aluminum Corp., Case No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (same); In re W.R. Grace & Co., Case No. 01-01139 (JJF) (Bankr. D. Del. Jun. 22, 2001) (order authorizing retention of Blackstone Group under terms of engagement letter, including, among other things, indemnification provisions similar to the Indemnification Provisions).

24. As set forth more fully in the Turnbull Declaration, the terms of the engagement are similar to the terms, both financial and otherwise, agreed to by Houlihan Lokey and other financial advisors and investment bankers in similar engagements, both in and outside

of bankruptcy. The terms of the Engagement Letter were negotiated at arms-length between the Debtors and Houlihan Lokey, and reflect the extensive work to be performed by Houlihan Lokey and the firm's advisory expertise.

### F. Disclosure of Compensation

25. Prior to the Petition Date, pursuant to the terms of the Engagement Letter, Houlihan Lokey received (i) $825,000.00 in Monthly Fees, and (iii) reimbursement of $45,197.62 in expenses incurred by Houlihan Lokey. In addition, prior to the Petition Date, Houlihan Lokey received $2,500.00 as an expense retainer, to cover any other miscellaneous expenses that were incurred prior to the Petition Date; the balance of this amount, will be applied toward post-petition fees and expenses that may become owed to Houlihan Lokey by the Debtors. As of the Petition Date, Houlihan Lokey did not hold a pre-petition claim against the Debtors.

26. To the best of the Debtors' knowledge, and except as disclosed in the Turnbull Declaration, Houlihan Lokey has not provided services to the Debtors' creditors, equity security holders, or any other parties-in-interest, or its respective attorneys, in any matter relating to the Debtors or their estates.

27. The Debtors respectfully request that Houlihan Lokey be retained <u>nunc pro tunc</u> to the Petition Date. Since the Petition Date, Houlihan Lokey has provided valuable services that were time sensitive and critical to protection of the interests of unsecured creditors herein.

### G. Fee Applications and Terms of Retention

28. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent

-11-

47658/0001-5952203v3

fee basis." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code reflects a significant departure from prior bankruptcy practice related to the compensation of professionals, as it permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continued under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants the reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328, the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

29. Section 328(a) of the Bankruptcy Code provides courts with inherent flexibility to approve alternative fee structures to the customary hourly rate. The fee structure for this engagement is similar to the fee arrangement approved by bankruptcy courts throughout the United States under section 328(a) of the Bankruptcy Code.

30. Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court, Houlihan Lokey will apply to the Court for the interim and final allowance of compensation and reimbursement of expenses.

31. Customarily, financial advisors like Houlihan Lokey do not charge for their services on an hourly basis. Instead, fees consist of monthly "flat" fees and deferred compensation contingent upon the occurrence of specified events, e.g., the confirmation of a chapter 11 plan. Like other financial advisors, Houlihan Lokey does not maintain time records like those maintained by attorneys' and other professionals compensated on an hourly basis.

47658/0001-5952203v3

32. Houlihan Lokey therefore requests approval, notwithstanding Local Rule 2016-2(d), to prepare its fee applications consistent with industry custom, i.e., as follows: (a) to describe their general activities, the identity of persons who performed such activities and the estimated amount of time expended on such activities (without project categories) and (b) to maintain such time records in one hour increments. Houlihan Lokey otherwise intends to apply to the Court for payment of compensation and reimbursement of fees and expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the UST Guidelines.

## NOTICE

33. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) those entities or individuals included on the Debtors' list of largest unsecured creditors on a consolidated bases; (vi) counsel to the agent for the Debtors' prepetition and postpetition lenders, (vii) counsel to Barzel Industries Canada, Inc. and (viii) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

34. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form of the proposed order attached as Exhibit C, (i) authorizing the Debtors to retain Houlihan Lokey as their financial advisors in these chapter 11 cases, and (ii) granting such other and further relief as the Court may deem proper.

Dated: September 21, 2009
Wilmington, Delaware

Respectfully submitted,

/s/ Karen N. Narwold
Karen Narwold
Vice President and Strategic Counsel
Barzel Industries Inc.