IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| Barzel Industries Inc., et al., | : Case No. 09-13204 (CSS) |
| Debtors.[1] | : (Jointly Administered) |

**DECLARATION OF G. WAYNE DAY IN SUPPORT OF THE (I) DEBTORS' MOTION FOR ORDER (A) APPROVING SALE PROCEDURES AND BUYER PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE; (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE; AND (C) APPROVING NOTICE OF RESPECTIVE DATE, TIME AND PLACE FOR AUCTION AND FOR HEARING ON APPROVAL OF THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND ORDER AUTHORIZING (A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; AND (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES ("<u>BID PROCEDURES MOTION</u>"); AND (II) DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) APPROVING POSTPETITION FINANCING AND REPAYMENT OF CERTAIN PREPETITION OBLIGATIONS, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY AND (VI) SCHEDULING A FINAL HEARING ("<u>DIP APPROVAL MOTION</u>")**

I, G. WAYNE DAY, hereby declare under penalty of perjury that the following information is true to the best of my knowledge, information and belief.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Barzel Industries Inc. (0836), Barzel Holdings Inc. (1107), Barzel Finco Inc. (1010), Barzel Industries U.S. Inc. (6382), American Steel and Aluminum Corporation (2435), Nova Tube and Steel, Inc. (1790), Novamerican Tube Holdings, Inc. (3740) and Nova Tube Indiana, LLC (8275).

1. I am a partner in Day Seckler, LLP ("Day Seckler"). In June 2009, the Debtors engaged Day Seckler to assist the Debtors in evaluating and implementing strategic and tactical options in connection with a potential restructuring and/or sale process. Specifically, Day Seckler was retained to serve as Financial Manager to assist the Debtors with the following: (a) stabilizing business operations; (b) assessing working capital requirements, sources of working capital and cost reduction opportunities; (c) analyzing financing data and other aspects of the Debtors' operations; (d) preparing financial forecasts; (e) participating in negotiations with the Debtors' lenders; and (f) providing assistance to Houlihan Lokey Howard & Zukin, Inc. ("Houlihan Lokey") in connection with the sale process. Since the Debtors' Chapter 11 filing, Day Seckler and its employees, including me, have acted as Chief Restructuring Officer ("CRO") to the Debtors. I am the individual at Day Seckler primarily responsible for this matter. An application seeking Day Seckler's retention as CRO will be submitted shortly.[2]

2. I am authorized to submit this Declaration on behalf of the Debtors, in support of the Bid Procedures Motion and the DIP Approval Motion[3]. Except as otherwise noted, the facts set forth herein are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' management and other professionals working with me or under my supervision, and they reflect my opinions based upon my knowledge, experience and information concerning the Debtors and their operations. If called upon to testify, I could and would testify competently to the facts set forth herein.

---

[2] Capitalized terms not defined herein have the meaning set forth in Bid Procedures Motion and DIP Approval Motion.

[3] This Court and the Canadian Court are holding a joint hearing on the motion filed in each court to approve the bid procedures. This declaration is also submitted in support of the entry of a bid procedures order in the Canadian proceedings; the Canadian order incorporates the same Sale Milestones and bid protections for the Buyers as described herein.

2

47658/0001-6026396v2

3. As more particularly set forth in the Declaration of Karen G. Narwold in support of the Debtors' Chapter 11 petitions and first day pleadings (the "Narwold Declaration") as well as in the DIP Approval Motion, the Debtors have outstanding secured debt as of the petition date of approximately $333,439,000 consisting of (a) not less than $315,000,000 due on account of the Notes; and (b) not less than $18,439,000 due under an asset based lending facility ("ABL").

4. On September 15, 2009, each of the Debtors filed a voluntary petition for Chapter 11 relief with this Court. On that same date, Barzel Industries Canada, Inc. ("Barzel Canada"), one of the Debtors' Canadian affiliates, filed an application with the Ontario Superior Court of Justice – Commercial List (the "Canadian Court") under the Companies Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA").

5. On September 15, 2009 the Debtors entered into the DIP Credit Agreement pursuant to which the prepetition lenders agreed to lend the Debtors up to $30,000,000, which includes the roll-up of the outstanding obligations under the ABL, and permits the use of the DIP proceeds and cash collateral to fund the Debtors' operations, pending consummation of the sale of the Debtors' assets. On September 17, 2009, the court entered an order approving the DIP Facility on an interim basis (the "Interim DIP Order"). The DIP Credit Agreement has been approved by separate order of the Canadian Court.[4]

6. The Debtors entered into an asset purchase agreement on September 14, 2009 with Chriscott USA Inc. and 4513614 Canada, Inc. (collectively the "Buyers") pursuant to which the Debtors propose to sell substantially all of their assets to the Buyers for $65,000,000 subject to certain adjustments and assumption of certain limited liabilities (the "APA").

---

[4] That order becomes final after the expiration of the 21 day appeal period.

47658/0001-6026396v2

7. The DIP Credit Agreement, Interim DIP Order and proposed Final DIP Order condition the Debtors' use of the proceeds of the DIP facility and cash collateral upon the Debtors' achievement of certain milestones for a 363 sale ("Sale Milestones"). The Sale Milestones are set forth in the Declaration of Daniel Sullivan as well as in the DIP Approval Motion and Bid Procedures Motion.

8. At the first day hearing on September 17, 2009, the Court expressed concerns that the Sale Milestones did not provide sufficient time for the Debtors to maximize the sale of their assets by obtaining higher and better offers and conducting a public auction.

9. I believe that the Sale Milestones are reasonable and appropriate and will enable the Debtors to achieve the best sale outcome possible in light of the facts and circumstances of this case. The Sale Milestones strike the proper balance between the goal of providing ample opportunity for higher and better offers and the need to promptly conclude a sale in light of the Debtors' dire financial condition and the precarious nature of their ongoing operations. The Debtors will continue to suffer losses prior to a closing of the sale of their assets. The longer the process, the greater the ongoing deterioration of operations and ongoing operating losses, and the greater the additional fees and other costs attendant to the Debtors' Chapter 11 and CCAA proceedings.

10. I was responsible for preparing the budget which is annexed to the Interim DIP Order. Based upon this budget, an extension of the sale process will result in additional operating losses of approximately $550,000 per week and the incurrence of additional professional fees. Since that budget was prepared, I have effectuated certain operating cost reductions which should partially ameliorate these additional losses. However, even with these reductions, operating losses will continue. Any losses can only be funded by (a) additional DIP borrowing, (b) the consumption

4

of inventory, cash and other assets, or (c) increasing trade payables. Under the APA, a reduction in assets or an increase in trade payables may result in an adjustment to net working capital, which would in turn result in a reduction of the $65,000,000 cash portion of the purchase price.

11. I believe that the Sale Milestones are reasonable and that they provide sufficient time for submission of competing bids to obtain higher and better offers and allow for a robust auction process. Annexed hereto as Exhibit A is a schedule prepared by Debtors' counsel that reflects sale milestones approved by Delaware Bankruptcy Courts in other recent cases. As the schedule demonstates, the Sale Milestones in this case, while understandably tight, are well within the range of sale milestones approved in similar cases.

12. In any event, as noted above, the total outstanding secured debt exceeds $333,439,000 at the time of filing and is projected to exceed $341,000,000 at the sale date. I do not believe that any amount of additional time for marketing and sale of the Debtors' business will conceivably produce the five-fold increase in the amount a purchaser would have to pay in order to fully satisfy the outstanding secured debt.

13. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of October, 2009.

_____
G. WAYNE DAY

47658/0001-6026396v2