# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Barzel Industries Inc., <u>et al.</u>, | : Case No. 09-13204 (CSS) |
| | : |
| Debtors.[1] | : (Jointly Administered) |
| | : |
| | Related to Docket No. 42 |

**ORDER (I) APPROVING SALE PROCEDURES AND BUYER PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND (III) APPROVING NOTICE OF RESPECTIVE DATE, TIME AND PLACE FOR AUCTION AND FOR HEARING ON APPROVAL OF THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

This matter coming before the Court on the motion (the "<u>Motion</u>")[2] of the above-caption debtors and debtors-in-possession (the "<u>Debtors</u>") seeking, pursuant to sections 105, 363, 364(c)(1), 365 and 503 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), entry of an order: (i) approving proposed sale procedures (the "<u>Sale Procedures</u>") and buyer protections in the form attached hereto as <u>Exhibit A</u>, including the proposed break-up fee (the "<u>Breakup Fee</u>") and expense reimbursement (the "<u>Expense Reimbursement</u>") in connection with the sale (the "<u>Proposed Sale</u>") of substantially all of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Barzel Industries Inc. (0836), Barzel Holdings Inc. (1107), Barzel Finco Inc. (1010), Barzel Industries U.S. Inc. (6382), American Steel Aluminum Corporation (2435), Nova Tube and Steel, Inc. (1790), Novamerican Tube Holdings, Inc. (3740) and Nova Tube Indiana, LLC (8275).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement by and among the Debtors and the Debtors' Canadian affiliate, as sellers, and Chriscott USA Inc. and 4513614 Canada Inc., as buyers, and if not therein, then the Motion.

Debtors' assets (the "Purchased Assets"), as more fully described in the Asset Purchase Agreement (the "APA"), by and among the Debtors and the Debtors' Canadian affiliate, as sellers, and Chriscott USA Inc. and 4513614 Canada Inc., as buyers (collectively, the "Stalking Horse Bidder"); (ii) scheduling an auction (the "Auction") and a hearing to consider approval of the Proposed Sale (the "Sale Hearing"); and (iii) approving notice in the form attached hereto as Exhibit B of the respective date, time and place for the Auction and the Sale Hearing (the "Auction and Sale Hearing Notice") for approval of the Proposed Sale and the assumption and assignment of certain executory contracts and unexpired leases as set forth in APA; and the Court having considered the statements of counsel and the evidence presented at the Bidding Procedures Hearing;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     This Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

B.     Notice of the hearing on the Motion and proposed entry of this Order has been provided to (i) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 2nd Floor, 844 King Street, Wilmington, Delaware 19801; (ii) counsel to JPM and CIBC, the Debtors' prepetition and postpetition secured lenders, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982, Attention: Andrew P. DeNatale, Esq. and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq.; (iii) counsel to the Stalking Horse Bidder, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York, 10166-0193, Attention: Steven Buffone, Esq. and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800,

P.O. Box 2087, Wilmington, DE 19899, Attention: Richard S. Cobb, Esq.; (iv) the top thirty (30) creditors of the Debtors or their known counsel; (v) the Office of the United States Attorney for the District of Delaware; (vi) the Securities and Exchange Commission; (vii) those parties who have requested service of all motions and pleadings pursuant to Bankruptcy Rule 2002; (viii) all creditors who have asserted liens, encumbrances and claims against, or interests in, the Purchased Assets; (ix) each party to an Assigned Contract or Assigned Lease under the APA; and (x) each party that previously expressed an interest in purchasing the Purchased Assets. Under the circumstances and in light of the relief requested in the Motion, requisite notice of the Motion, the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rules 4001(c) and (d) and 9014, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, Bankruptcy Code § 102(1), and no further notice of, or hearing on, the Motion or this Order is necessary or required.

C.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief requested in the Motion, including approval of (i) the Sale Procedures, attached hereto as <u>Exhibit A</u> and (ii) the Breakup Fee on the terms set forth in this Order.

D.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling an Auction and considering approval of the Proposed Sale and the transfer of the Purchased Assets to the Successful Bidder free and clear of all liens, claims, interests, and Encumbrances pursuant to sections 105, 363 and 365 of the Bankruptcy Code.

E.      The Breakup Fee or Expense Reimbursement to be paid to the Stalking Horse Bidder, under the circumstances described herein and in the APA, are: (i) actual and

necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) reasonable and appropriate in light of the size and nature of the Proposed Sale and comparable transactions; and (iv) necessary to induce the Stalking Horse Bidder to continue to pursue the Proposed Sale.

F.      Moreover, the Breakup Fee and the Expense Reimbursement are essential inducements and conditions relating to the Stalking Horse Bidder's entry into, and continuing obligations under, the APA. The Breakup Fee and the Expense Reimbursement induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid on which the Debtors, their creditors, and other bidders can rely. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible price for the Purchased Assets will be received. Accordingly, the Breakup Fee and Expense Reimbursement are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

G.      The Auction and Sale Hearing Notice and the Cure Cost Notice, in the form attached hereto as Exhibit C, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Proposed Sale of the Purchased Assets, the Auction, the assumption and assignment of Assigned Contracts and Assigned Leases, the APA and the Sale Procedures to be employed in connection therewith.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent provided herein.

2.      The Sale Procedures attached hereto as Exhibit A are approved, are incorporated herein by reference, and, subject to approval of the Sale Procedures in substantially

the same form by the Ontario Superior Court of Justice – Commercial List (the "Canadian Court") shall govern all bids and bid proceedings relating to the Purchased Assets. The Debtors are authorized to take any and all actions necessary to implement the Sale Procedures subject to approval of the Sale Procedures in substantially the same form by the Canadian Court.

3.      Section 9.2 of the APA is hereby approved and binding upon the Debtors and their estates. The Debtors are authorized to pay, without further order of the Court, to the Stalking Horse Bidder, the Breakup Fee and the Expense Reimbursement in the event that such Breakup Fee or Expense Reimbursement are payable under the terms of the APA, on the terms set forth in the APA. The Debtors' obligation to pay the Breakup Fee or the Expense Reimbursement shall constitute superpriority administrative expense priority obligations under Bankruptcy Code § 364(c)(1) with priority over any and all expenses of the kind specified in Bankruptcy Code §§ 364(c)(1), 503(b) and 507(b), until such payment is made.

4.      The Breakup Fee or Expense Reimbursement, if required, shall be paid in Cash, within the time frames set forth in the APA in accordance with the terms thereof and Paragraph 3 above.

5.      Not later than three (3) days after entry of this Order, the Debtors will cause the Auction and Sale Hearing Notice, in the form attached hereto as Exhibit B to be sent by first-class mail postage prepaid to (i) the Office of the United States Trustee; (ii) counsel to JPM and CIBC; (iii) counsel to the Stalking Horse Bidder; (iv) counsel to the Official Committee of Unsecured Creditors; (v) the top thirty (30) creditors of the Debtors or their known counsel; (vi) the Office of the United States Attorney for the District of Delaware; (vii) the Securities and Exchange Commission; (viii) those parties who have requested service of all motions and pleadings pursuant to Bankruptcy Rule 2002; (ix) all creditors who have asserted liens,

Encumbrances and claims against, or interests in, the Purchased Assets; (x) each party to an executory contract or unexpired lease with the Debtors that is designated for assumption and assignment to the Stalking Horse Bidder under the APA; and (xi) each party that previously expressed an interest in purchasing the Purchased Assets.

6.      Not later than seven (7) days after the entry of this Order, the Debtors shall cause notice substantially in the form of the Auction and Sale Hearing Notice to be published in the national edition of <u>The Wall Street Journal</u>, <u>The New York Times</u>, or <u>USA Today</u>, as to be determined by the Debtors. Such publication notice shall be sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

7.      In addition, to facilitate the sale, assumption and assignment of any Assigned Contracts and Assigned Leases (each as defined in the APA), the Debtors will serve a notice (the "<u>Cure Cost Notice</u>"), in the form attached hereto as <u>Exhibit C</u> not later than five (5) days after the entry of this Order upon each counterparty to the Assigned Contracts and the Assigned Leases and their known counsel, and to any other counterparties to other contracts and leases that the Debtors believe may be selected as Assigned Contracts or Assigned Lease as part of an alternative transaction.[3] To the extent that the Stalking Horse Bidder is not the Successful Bidder and an alternate Successful Bidder is seeking to have any contracts not set forth in the Cure Cost Notice assumed and assigned as assigned contracts and assigned leases as part of an alternate transaction, the Debtors and the Successful Bidder shall provide financial information for the alternate bidder to all non-debtor parties to such assigned contracts and

---

[3] The Stalking Horse Bidder will provide the non-debtor parties to the Assigned Contracts information regarding the Stalking Horse Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code within one (1) week prior to the deadline for objecting to the Proposed Sale.

assigned leases and their known counsel immediately following the Auction via facsimile or Federal Express.

8.     The Debtors will attach to the Cure Cost Notice their calculation of the amounts that must be paid in connection with the assumption and assignment of the Assigned Contracts and Assigned Leases, including pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code (the "Cure Amount"). If no amount is listed, the Debtors believe that there are no Cure Amounts. Unless the non-debtor party to an Assigned Contract or Assigned Lease files an objection (the "Cure Cost Objection") to the Cure Amounts contained in the Cure Cost Notice by October 23, 2009 at 4:00 p.m. (Eastern Time) (or in the event the Stalking Horse Bidder is not the Successful Bidder and such non-debtor party only received notice in accordance with the final sentence of Paragraph 7 above, at or prior to the Sale Hearing), and serves the objection upon (i) counsel to the Debtors, Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attention: Norman L. Pernick, Esq. and Kelley Drye & Warren LLP, 400 Atlantic Street, Stamford Connecticut 06901, Attention: M. Ridgeway Barker, Esq., (ii) counsel to the Stalking Horse Bidder, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166-0193, Attention: Steven Buffone, Esq., and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, P.O. Box 2087, Wilmington, DE 19899, Attention: Richard S. Cobb, Esq.; and (iii) counsel to the DIP lenders, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attention: Andrew DeNatale, Esq., and Richards Layton and Finger, P.A., 920 North King Street, Wilmington, DE 19801-1494, Attention: Mark Collins, Esq., such non-debtor party shall (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts arising prior to the Closing Date with respect to such Assigned Contract or Assigned Lease and the

Debtors and the Stalking Horse Bidder/Successful Bidder shall be entitled to rely solely upon the Cure Amount set forth in the Cure Cost Notice; (b) be deemed to have consented to the Debtors' assumption and assignment of such Assigned Contract or Assigned Lease; and (c) be forever barred and estopped from asserting or claiming against the Debtors, the Stalking Horse Bidder, or such other Successful Bidder or any other assignee of the relevant Assigned Contract or Assigned Lease that any additional amounts are due or defaults exist under such Assigned Contract or Assigned Lease as of the Closing Date.

9.  In the event that a Cure Cost Objection is timely filed, the Cure Cost Objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the party asserts as the appropriate Cure Amount, and (iii) appropriate documentation in support of the Cure Amount. If the Debtors and the non-debtor party to the Assigned Contract or Assigned Lease cannot consensually resolve the Cure Cost Objection, the Debtor, the Stalking Horse Bidder, Successful Bidder or any other assignee will segregate any disputed cure amounts (to the extent such party is obligated to pay such Cure Costs) pending the resolution of any such disputes by this Court or mutual agreement of the parties.

10.  Hearings on Cure Cost Objections may be held (a) at the Sale Hearing, or (b) on such other date as this Court may designate.

11.     The Stalking Horse Bidder shall provide all non-debtor parties to leases and executory contracts identified as an Assigned Contract or Assigned Lease and their known counsel information with respect to their adequate assurance of future performance pursuant to Bankruptcy Code Sections 365(b)(1)(C) and 365(f)(2) within one week prior to the objection deadline to the approval of the Sale. The provision of such information shall not bar, estop, or otherwise enjoin any non-debtor party to such Assigned Contract or Assigned Lease from objecting at the Sale Hearing to the sufficiency of the adequate assurance of future performance.

12.     The deadline for submitting a Qualified Bid (as such term is defined in the Sale Procedures) shall be October 26 at noon (Eastern Time) (the "Bid Deadline").

13.     To the extent at least one Qualified Bid, other than the Stalking Horse Bidder's bid, is timely received, the Debtors shall conduct the Auction on October 28, 2009 at 10:00 a.m. (Eastern Time) at the offices of Debtors' counsel, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178. Potential Bidders will be given advance notice of any changes to the date, time, and place of the Auction via e-mail or fax, if supplied by the Potential Bidders, or via overnight mail. The Auction will be open only to the Stalking Horse Bidder, the DIP lenders, counsel to the Official Committee of Unsecured Creditors, Barzel Industries Canada Inc., the Canadian Monitor, and any other Qualified Bidder. The Auction will be transcribed or videotaped.

14.     The Stalking Horse Agreement is a Qualified Bid, and the Stalking Horse Bidder is a Qualified Bidder, for all purposes and requirements pursuant to the Sale Procedures, notwithstanding the requirements that Potential Bidders must satisfy to be a Qualified Bidder.

15.     If the Debtors do not receive any Qualified Bids other than the Stalking Horse Agreement, the Debtors will not hold an auction, the Stalking Horse Agreement will be the Successful Bid and the Stalking Horse Bidder will be named the Successful Bidder.

16.     Objections, if any, to the relief requested in the Sale Motion must: (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (prevailing Eastern Time) on October 23, 2009 and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon (i) counsel to the Debtor, Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Fax: (302) 652-3117, Attention: Norman L. Pernick, Esq., e-mail: npernick@coleschotz.com, (ii) Gibson, Dunn & Crutcher, 200 Park Avenue, New York, New York 10166-0193, Attention: Steven Buffone, Esq., and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, P.O. Box 2087, Wilmington, DE 19899, Attention: Richard S. Cobb, Esq. (together, the "Notice Parties"), and (iii) counsel to the DIP lenders, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attention: Andrew DeNatale, Esq., and Richards Layton and Finger, P.A., 920 North King Street, Wilmington, DE 19801-1494, Attention: Mark Collins, Esq.; provided, however, to the extent that the Stalking Horse Bidder is not the Successful Bidder and an alternate Successful Bidder is seeking to have certain unexpired leases, license agreements and executory contracts assumed and assigned as part of an alternate transaction, the non-debtor parties to such unexpired leases, license agreements and executory contracts shall have until the Sale Hearing to raise objections to the sale to the alternate

Successful Bidder including, without limitation, to the timing and sufficiency of the adequate assurance of future performance.

17.   The Sale Hearing shall be held before this Court on October 30, 2009 at 10:00 a.m. (Eastern Time).  The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

18.   All bidders submitting a Qualified Bid are deemed to have submitted to the jurisdiction of this Court and the Canadian Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Purchased Assets.

19.   The notices to be issued in connection with the Proposed Sale of the Purchased Assets, substantially in the form of the notices attached hereto as Exhibits B and C are approved.

20.   All bidders at the Auction shall be deemed to have consented to the core jurisdiction of this Court and the Canadian Court and waived any right to jury trial in connection with any disputes relating to the Auction, the sale of the Purchased Assets and the construction and enforcement of the APA.

21.   Each bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

22.   As provided by Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for ten (10) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

23.   All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.    This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Sale Procedures in respect of the US Debtors and their assets.

Dated:    October  6 , 2009
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE