IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                                                           :
In re:                                                     :   Chapter 11
                                                           :
                                                           :   Case No. 09- 13204
Barzel Industries Inc., et al.,[1]                         :
                                                           :   Jointly Administered
                                                           :
                                  Debtors.                 :   **Related Docket Nos. 13, 57**
---------------------------------------------------------- x

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 AND
RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING
USE OF CASH COLLATERAL AND REPAYMENT OF CERTAIN PREPETITION
OBLIGATIONS, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE
PROTECTION, AND (V) MODIFYING THE AUTOMATIC STAY**

This matter having come before the Court upon the motion (the "DIP Motion") of Barzel

Industries Inc. ("BII") and its affiliated debtors and debtors-in-possession (collectively, the

"Debtors") in the above-captioned Chapter 11 cases (collectively with any Successor Cases (as

defined herein), the "Cases"), pursuant to Sections 105, 361, 362, 363, 364 and 507 of title 11 of

the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rules

2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), seeking, inter alia, entry of an interim order and this final order (the "Final Order"):

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are
Barzel Industries, Inc. (0836), Barzel Holdings, Inc. (1107), Barzel Finco, Inc. (1010), Barzel Industries U.S. Inc.
(6382), American Steel Aluminum Corporation (2435), Nova Tube and Steel Inc. (1790), Novamerican Tube
Holdings, Inc. (3740), and Nova Tube Indiana, LLC (8275).

(i)        authorizing the Debtors to obtain secured postpetition financing (the "DIP Loans") on a superpriority basis (the "DIP Facility") pursuant to the terms and conditions of that certain Senior Secured, Super-Priority Debtor-in-Possession Revolving Credit Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "DIP Agreement") by and among BII, Barzel Finco, Inc. (the "US Borrower"), Barzel Industries Canada Inc. (the "Canadian Borrower" and, together with the US Borrower, the "Borrowers"), JPMorgan Chase Bank, N.A., as administrative agent (the "DIP Administrative Agent") for and on behalf of itself and the other lenders party thereto from time to time (collectively, including the DIP Administrative Agent, the "DIP Lenders"),[2] JPMorgan Chase Bank, N.A., Toronto Branch, as Canadian agent, and substantially in the form of Exhibit B annexed to the DIP Motion;[3]

(ii)       authorizing the Debtors to execute and deliver the DIP Agreement and the other related loan and security documents (collectively, together with the Interim Order (as defined below) and this Final Order, the "DIP Loan Documents"), by and among the Borrowers, BII, the other Loan Parties thereto, and the DIP Administrative Agent, and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(iii)      authorizing the Debtors to roll-up all outstanding Obligations (as such term is defined in the Prepetition Credit Agreement) under the Prepetition Credit Agreement (as defined herein) into the DIP Facility, including, without limitation, any amounts that have been

---

[2] The identity of the DIP Lenders and the Prepetition Credit Agreement Lenders (each as defined herein) is the same: JPMorgan Chase Bank, N.A. and CIBC Inc. JPMorgan Chase Bank, N.A. is also one of the Prepetition Senior Noteholders (as defined herein), along with CIBC World Markets Inc. In addition, the outstanding letters of credit issued under the Prepetition Credit Agreement were and continue to be issued by Bank of America, N.A., who is a party to the Prepetition Credit Agreement solely in the capacity of issuer of such outstanding letters of credit.

[3] BII is the ultimate parent company of both Borrowers. The U.S. obligations under the DIP Facility are guaranteed by the Debtors, while the Canadian obligations under the DIP Facility are guaranteed by the Debtors and the Canadian Borrower (as defined below) (collectively, the "Guarantors").

drawn but not repaid, accrued but unpaid interest, any reimbursement obligations with respect to letters of credit issued thereunder as well as any amounts owing under the Prepetition Credit Agreement that are currently contingent and unliquidated and subsequently become liquidated (the "Roll-Up"); provided that the Roll-Up shall be subject to paragraph 31 hereof;[4]

(iv)    authorizing the Debtors to use the proceeds of loans advanced under the DIP Loan Documents in a manner consistent with the terms and conditions of, and for the expenditures set forth in, the Approved Budget (as defined below) and the DIP Loan Documents;

(v)    authorizing the Debtors to use "Cash Collateral" as such term is defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral") in a manner consistent with the terms and conditions of, and for the expenditures set forth in, the Approved Budget and this Final Order;

(vi)    granting the DIP Facility and all obligations owing to the DIP Administrative Agent and DIP Lenders under the DIP Loan Documents, including, without limitation, all "Obligations" as defined in the DIP Agreement, (collectively, the "DIP Obligations") allowed superpriority administrative expense claim status in the Cases pursuant to Section 364(c)(1) of the Bankruptcy Code and in accordance with paragraph 30 hereof;

(vii)    granting to the DIP Administrative Agent, for the benefit of itself and the DIP Lenders, automatically and properly perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all Cash Collateral, which liens shall be subject to the priorities set forth herein;

---

[4] For purposes of this Final Order, all references herein to the DIP Loan Documents, DIP Facility, DIP Loans, DIP Administrative Agent, DIP Lenders, DIP Obligations, DIP Liens and DIP Collateral or similar terms shall be deemed to incorporate the Prepetition Credit Agreement Documents, Prepetition Credit Agreement Agent, Prepetition Credit Agreement Lenders, Prepetition Credit Agreement Obligations, Prepetition Credit Agreement Liens and Prepetition Credit Agreement Collateral or similar terms, as applicable, to the extent that the Prepetition Credit Agreement Obligations have been rolled up into the DIP Facility.

3

(viii)    authorizing the Debtors to pay the fees, costs and expenses of the DIP Administrative Agent and the DIP Lenders (including all reasonable, out-of-pocket fees, expenses and disbursements of their professionals, including, without limitation, their financial advisor and primary, Delaware and Canadian counsel) in connection with (a) the preparation, execution and delivery of the DIP Loan Documents and the funding of all DIP Loans under the DIP Facility, the administration of the DIP Facility, and any amendment or waiver of any provision of the DIP Loan Documents and (b) the enforcement of any of their rights and remedies under the DIP Loan Documents (collectively, the "DIP Lender Expenses"), in each case to the extent provided in and in accordance with the terms of the DIP Loan Documents;

(ix)    providing adequate protection to the Prepetition Representatives and the Prepetition Lenders for any Diminution in Value of their respective interests in the Prepetition Collateral (each as defined below), including the Cash Collateral; and

(x)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents, as limited pursuant hereto.

The Court having considered the DIP Motion, the Declaration of Karen G. Narwold in Support of the Debtors' Chapter 11 Petition and First Day Motions, the exhibits attached thereto, the DIP Loan Documents, and the evidence and arguments submitted at the interim hearing held on September 17, 2009 (the "Interim Hearing"); the evidence and arguments submitted at the final hearing held on October 6, 2009 (the "Final Hearing"); and the Court having entered on September 17, 2009 an order approving the DIP Motion on an interim basis (D.I. 57) (the "Interim Order"); and adequate notice of the Final Hearing having been provided in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules; and all objections, if any, to the

4

relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court as set forth below; and it appearing to the Court that granting the relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors and their estates; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL HEARINGS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

      A.    *Commencement of Cases*.  On September 15, 2009 (the "Petition Date"), each Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.  The Cases have been consolidated for procedural purposes only and are being jointly administered. The Debtors are continuing in the management and operation of their businesses and properties as Debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.  On September 30, 2009, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") in these Cases.  The Creditors' Committee has, subject to Court approval, retained the firms of McDonald Hopkins LLC and Morris, Nichols, Arsht & Tunnell LLP (jointly, "Counsel to the Creditors' Committee") as its counsel.

      B.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rules 2002-1(b), 4001-2,

9006-1 and 9013-1. Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.   *Canadian Cases*. On September 15, 2009, the Canadian Borrower filed an Application in the Ontario Superior Court of Justice (the "CCAA Court") under the Canadian Companies' Creditors Arrangement Act ("CCAA") (the case commenced under the CCAA by the Canadian Borrower, the "Canadian Proceedings") seeking relief from its creditors in Canada. On that same date, the Canadian Borrower obtained an Order of the CCAA Court which, inter alia, (i) declares that the Canadian Borrower is entitled to relief under the CCAA; (ii) appoints Deloitte & Touche Inc. as monitor of the Canadian Borrower; (iii) grants a stay of proceedings in respect of the Canadian Borrower; (iv) approves the DIP Agreement in respect of the Canadian Borrower; and (v) approves a cross-border insolvency protocol between the CCAA Court and the Court (the "CCAA Initial Order").

      D.   *Debtors' Stipulations*. The Debtors admit, stipulate, acknowledge and agree that (the following paragraphs D(i) through D(viii) are collectively defined as the "Debtors' Stipulations"):[5]

      (i)   *Prepetition Facilities.* Pursuant to that certain Credit Agreement dated as of November 15, 2007 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Prepetition Credit Agreement," and together with all related loan and security documents, the "Prepetition Credit Agreement Documents"), among BII, the Borrowers, the "Loan Parties" party thereto, various lenders party thereto (collectively, the "Prepetition Credit Agreement Lenders"), CIT Business Credit Canada Inc. and the CIT Group/Business Credit,

---

[5] Nothing in the Debtors' Stipulations below shall prejudice the rights of the Creditors' Committee to challenge the validity, priority, perfection or extent of any Prepetition Lien in accordance with the terms of paragraph 31 of this Final Order.

6

Inc., as Syndication Agents, JPMorgan Chase Bank, N.A., as Administrative Agent (the "Prepetition Administrative Agent"), JPMorgan Chase Bank, N.A., Toronto Branch, as Canadian Agent, and Bank of America, N.A., The Bank of Nova Scotia and General Electric Capital Corporation, as Co-Documentation Agents, the Prepetition Credit Agreement Lenders provided a revolving credit facility, and letters of credit were issued for the account of the Borrowers.

In addition, pursuant to that certain Indenture dated as of November 15, 2007 (the "Prepetition Indenture" and together with all related note and security documents and the Prepetition Senior Notes, the "Prepetition Indenture Documents"), among, BII, the US Borrower, as issuer of 11.5% Senior Secured Notes due 2015 (the "Prepetition Senior Notes"), Bank of New York Mellon (f/k/a The Bank of New York), as Trustee (the "Prepetition Indenture Trustee"), and BNY Trust Company of Canada, as Canadian Collateral Agent, the holders of the Prepetition Senior Notes (the "Prepetition Senior Noteholders") purchased Securities (as defined therein) from the US Borrower.

The Prepetition Credit Agreement Documents and Prepetition Indenture Documents shall be defined collectively as the "Prepetition Loan Documents". The Prepetition Administrative Agent and the Prepetition Indenture Trustee shall be defined collectively as the "Prepetition Representatives". The Prepetition Credit Agreement Lenders and the Prepetition Senior Noteholders shall be defined collectively as the "Prepetition Lenders".

(ii) **_Prepetition Obligations._** The Prepetition Credit Agreement originally provided the Borrowers with, among other things, up to $175,000,000 in aggregate principal amount of revolving commitments, including letter of credit and swingline loan commitments. As of the Petition Date, the outstanding principal amount owed by the Borrowers under the Prepetition Credit Agreement Documents was not less than $18,439,000 which includes the

outstanding face amount of all letters of credit under the Prepetition Credit Agreement Documents (which was not less than $883,000) (collectively, together with any amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Credit Agreement Documents, including but not limited to, interest, fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), charges, all Obligations (as defined in the Prepetition Credit Agreement) and all other amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrowers' obligations pursuant to the Prepetition Credit Agreement Documents, the "Prepetition Credit Agreement Obligations").

As of the Petition Date, the outstanding principal amount owed by the US Borrower under the Prepetition Indenture Documents was not less than $315,000,000 (together with any amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Indenture Documents, including but not limited to, interest, fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), charges, all Notes Obligations (as defined in the Prepetition Indenture) and all other amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrowers' obligations pursuant to the Prepetition Indenture Documents, the "Prepetition Indenture Obligations"). The Prepetition Credit Agreement Obligations and the Prepetition Indenture Obligations shall be defined collectively as the "Prepetition Obligations".

(iii)    ***Prepetition Collateral.*** The Prepetition Credit Agreement Obligations are secured by the "Prepetition Credit Agreement Liens", which are defined to mean: (a) first

8

priority security interests in and liens on all or substantially all of the Debtors' and Canadian Borrower's and 632422 N.B. Ltd.'s (i) accounts receivable and related records, chattel paper, deposit accounts, cash, checks and other negotiable instruments, funds and other evidences of payment, (ii) inventory, (iii) documents, general intangibles, instruments, investment property and letter of credit rights evidencing assets in clauses (i) and (ii), and (iv) books and records evidencing, and proceeds, including insurance proceeds, of, the foregoing, as set forth in the Prepetition Credit Agreement Documents, including, without limitation, all "ABL Collateral" (as such term is defined in the Prepetition Credit Agreement Documents) (collectively, the "Prepetition Credit Agreement Collateral"); and (b) second priority security interests in and liens on the Debtors' (i) owned real property (subject to one exception), fixtures, equipment, instruments, investment property, intellectual property, contract rights, other general intangibles and other assets that do not constitute Prepetition Credit Agreement Collateral, (ii) a pledge of 100% of the equity interests in all wholly-owned US subsidiaries of BII and a pledge of 66% of the equity interests in the Canadian Borrower, (iii) intercompany receivables, including the receivables owed by the Canadian Borrower that are secured by the Canadian Borrower's assets of the types described in clause (i) above and 100% of the capital stock of each existing and future subsidiary of the Canadian Borrower except non-wholly owned subsidiaries (and certain special purpose subsidiaries) where pursuant to the organizational documents of such subsidiary and any related joint venture or similar agreement such pledge is prohibited and (iv) proceeds of the foregoing (collectively, the "Prepetition Indenture Collateral" and, together with the Prepetition Credit Agreement Collateral, the "Prepetition Collateral"); provided, however, that the Prepetition Credit Agreement Collateral does not include any property that has been excluded from the definition of "Collateral" in the Prepetition Credit Agreement Documents. The

9

Prepetition Collateral and the DIP Collateral (as defined below) shall be collectively defined as the "Collateral".

The Prepetition Indenture Obligations are secured by the "Prepetition Indenture Liens", which are defined to mean (a) first priority security interests in and liens on the Prepetition Indenture Collateral and (b) second priority security interests in and liens on the Prepetition Credit Agreement Collateral; provided, however, that the Prepetition Indenture Collateral does not include any property that has been excluded from the definition of "Collateral" in the Prepetition Indenture Documents.

      (iv)    ***The Prepetition Liens.***   The Prepetition Collateral constitutes all or substantially all of the Debtors' property and is subject to the duly perfected liens of the Prepetition Lenders (collectively, the "Prepetition Liens").

      (v)    ***Validity of Prepetition Liens and Prepetition Obligations.***  The Debtors and the Prepetition Representatives acknowledge and agree that: (a) the Prepetition Liens are valid, binding, enforceable, non-avoidable and duly perfected; (b) the Prepetition Liens have priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Loan Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date or after the Petition Date pursuant to section 546(b) of the Bankruptcy Code, the "Permitted Senior Prior Liens");[6] (c) the Prepetition Credit Agreement Obligations and the Prepetition Indenture Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Credit Agreement

---

[6] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Senior Prior Liens are valid, senior, perfected and non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives, the Prepetition Lenders or the Creditors' Committee to challenge the validity, priority, perfection, enforceability or extent of any such Permitted Senior Prior Lien and/or security interest.

10

Documents and the Prepetition Indenture Documents, respectively (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code); (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is subject to any challenge or defense, including, without limitation, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code against any of the Prepetition Representatives or the Prepetition Lenders and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to any of the Prepetition Loan Documents; (f) the Debtors do not possess, may not assert and have waived, discharged and released any right they may have to challenge any of the Prepetition Obligations and the Prepetition Liens, and to assert any offsets, defenses, claims, counterclaims, objections, challenges, causes of action and/or choses of action against the Prepetition Representatives, Prepetition Lenders, and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees with respect to actions arising out of, based upon or related to the Prepetition Loan Documents; and (g) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Representatives or the Prepetition Lenders prior to the Petition Date were legal and valid and are not subject to avoidance or disgorgement, and the Debtors have waived any right to challenge such payments.

11

(vi)    ***Cash Collateral.***  The Debtors represent that all of the Debtors' cash, including the cash in its deposit accounts, wherever located, whether as original Prepetition Collateral or proceeds of other Prepetition Collateral, constitutes the Cash Collateral of the Prepetition Representatives and the Prepetition Lenders.

(vii)    ***Section 363 Sale.***  The Debtors have been experiencing substantial cash losses and have been unable to obtain sufficient funding to continue operating their businesses. Accordingly, the Debtors have determined that it is in the best interests of their estates and creditors to sell all or substantially all of their assets in a sale pursuant to Section 363 of the Bankruptcy Code (the "363 Sale").  The Debtors have engaged the services of a financial advisor, Houlihan Lokey Howard & Zukin Capital, Inc., to assist them in finding a purchaser for the Debtors' and the Canadian Borrower's businesses (the "Sale Process").  The Sale Process has been underway for more than three (3) months and has recently come to a conclusion whereby the Debtors have identified a stalking horse bidder to participate in the 363 Sale.  Based upon the indications of intent received as part of the Sale Process, the Debtors believe that the proceeds realized from the 363 Sale will be substantially less than the amount of the DIP Loans and Prepetition Obligations.  The Debtors wish to commence the 363 Sale as promptly as possible, and the DIP Facility will enable the Debtors to continue operations and preserve and maintain their assets and properties pending the consummation of the 363 Sale.  As set forth in the Approved Budget, the DIP Lenders will provide the Debtors with sufficient funds to pay for reasonable expenses and obligations incurred in the Cases through the closing of the 363 Sale. Unless terminated sooner pursuant to the provisions of the DIP Agreement, the DIP Facility will terminate upon consummation of the 363 Sale at which time an amount of up to $2,250,000 of the 363 Sale proceeds (the "Wind-Up Amount") will be provided to fund the reasonable and

12

necessary expenses in connection with the wind-up of the Cases and the Canadian Proceedings. The Wind-Up Amount shall include no more than $500,000 on account of any key employee incentive plan or related severance for the participants in the key employee incentive plan for any employees of the Debtors or the Canadian Borrower.[7] In addition, upon consummation of the 363 Sale, the DIP Lenders will provide funds, as a further carve-out from the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claims, for the payment of, as and when approved for payment by the Bankruptcy Court or the Canadian Court, as applicable, the reasonable fees and expenses incurred but not yet paid in the Cases and the Canadian Proceedings by professionals retained by the Debtors or the Creditors' Committee prior to the consummation of a 363 Sale (to the extent such fees and expenses are subsequently allowed by the Bankruptcy Court or the Canadian Court, as applicable, and subject to the rights of the DIP Administrative Agent, the DIP Lenders and any other party in interest to object to the allowance of any such fees and expenses (collectively, the "Pre-Sale Closing Professionals' Fees")); provided, that the DIP Lenders are only so obligated to the extent that the aggregate amount paid to any professional firm retained by either the Debtors or the Creditors' Committee on account of fees and expenses incurred prior to the consummation of the 363 Sale does not exceed the amount set forth for such firm in the "Total Fees" column in the Schedule of Estimated Professional Fees (the "Fee Schedule") annexed to the Approved Budget and subject to paragraph 18 of this Final Order. Subject to paragraph 31 below, for avoidance of doubt, notwithstanding anything to the contrary herein (except for paragraph 31 below hereof), subsequent to the consummation of the 363 Sale and payment of the Wind-Up

---

[7] Nothing in this Order shall act to prejudice or waive the rights of the Creditors' Committee or any other party in interest to object to any key employee incentive plan or related severance for the participants in the key employee incentive plan for any employees of the Debtors or the Canadian Borrower.

Amount and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30 hereof), any proceeds of the sale, lease or other disposition of any remaining assets that constitute Collateral shall be paid to the DIP Administrative Agent or the Prepetition Representatives, as applicable, within two (2) business days of the closing of such sale, lease or other disposition.

(viii)    *Default by the Debtors*.  The Debtors acknowledge and stipulate that, as of the Petition Date, the Debtors are not in default under the Prepetition Loan Documents except to the extent that they have taken actions for the purpose of effecting the filing of these Cases.

E.    *Findings Regarding Postpetition Financing*.

(i)    *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents and (b) use Cash Collateral on the terms described herein, in each case to administer their Cases and fund their operations pending consummation of the 363 Sale.

(ii)    *Priming of Liens*.  The priming of the Prepetition Liens under Section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and continue operations pending the consummation of the 363 Sale and make possible the wind-up of the Cases thereafter as described in paragraph (D)(vii) above.  The Prepetition Representatives and Prepetition Lenders, however, are entitled to receive adequate protection as set forth in this Final Order pursuant to Sections 361, 363 and 364 of the Bankruptcy Code for any diminution in the value of each of their respective interests in the Prepetition Collateral (including Cash Collateral) resulting from, among other things, the Debtors' use, sale or lease of such collateral, market value decline of such collateral, the imposition of the automatic stay, the priming (to the extent provided for

14

herein) of the Prepetition Liens, and the subordination to the Carve-Out (as defined below) (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

        (iii)    ***Need for Postpetition Financing and Use of Cash Collateral.***  The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical to enable the Debtors to continue operations and preserve and maintain their assets and properties pending the consummation of the 363 Sale and make possible the wind-up of the Cases thereafter as described in paragraph (D)(vii) above.  The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, pay their employees, and otherwise continue as a going concern, pending consummation of the 363 Sale, has required, and continues to require, the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either one of which would immediately and irreparably harm the Debtors, their estates and their creditors.  Without the DIP Facility and authorized use of Cash Collateral, the Debtors do not have sufficient available sources of working capital and financing to continue operations and preserve and maintain their assets and properties pending consummation of the 363 Sale and make possible the wind-up of the Cases thereafter as described in paragraph (D)(vii) above.

        (iv)    ***No Credit Available on More Favorable Terms.***  Given their current financial condition, financing arrangements, and capital structure, the present state of the economy, and the limited availability of credit being provided by lenders in general, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than those provided for in the DIP Facility.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense.  The

RLF1-3442712-1

Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that are subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Administrative Agent, for the benefit of itself and the DIP Lenders, subject only to the Carve-Out, the Sellers Termination Fee and/or the Expense Reimbursement[8] (in accordance with paragraph 30), or as otherwise expressly set forth in this Final Order: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraphs 7 and 8 hereof, (2) superpriority claims, and (3) the other protections set forth in this Final Order.

(v)     *Use of Proceeds of the DIP Facility.* As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives and the Prepetition Lenders require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents, in accordance with the Approved Budget, and only for: (i) payment of (A) the working capital and other general corporate needs (the "Working Capital Needs") of the Debtors and the Canadian Borrower in the ordinary course of business, (B) Chapter 11 and CCAA expenses, including professional fees and expenses (the "Expenses"), and (C) adequate protection payments in favor of the Prepetition Lenders as set forth below (the "Adequate Protection

---

[8]  The capitalized terms "Sellers Termination Fee" and the "Expense Reimbursement" are each defined in that certain Asset Purchase Agreement dated as of September 15, 2009 (the "APA"), by and among the Debtors, the Canadian Borrower and Chriscott USA Inc. and 4513614 Canada Inc. (collectively, the "Buyer").

16

<u>Payments</u>"); and (ii) repayment in full of the remaining outstanding Prepetition Credit Agreement Obligations so as to consummate the Roll-Up.

F.    *Adequate Protection.*  The Prepetition Administrative Agent, for the benefit of itself and the Prepetition Credit Agreement Lenders, and the Prepetition Indenture Trustee, for the benefit of itself and the Prepetition Senior Noteholders, are entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).  Pursuant to Sections 361, 363 and 507(b), and subject to the terms of this Final Order, as adequate protection, (i) the Prepetition Administrative Agent, for the benefit of itself and the Prepetition Credit Agreement Lenders, until such time as the Roll-Up has been completed, and (ii) the Prepetition Indenture Trustee, for the benefit of itself and the Prepetition Senior Noteholders, will each (A) receive payments in cash on a current basis of all reasonable fees, costs and expenses of outside counsel, including local counsel, <u>provided</u>, however, that the Prepetition Administrative Agent and the Prepetition Indenture Trustee shall provide copies of its fee and expense statements to the U.S. Trustee and Counsel for the Creditors' Committee contemporaneously with the delivery of such fee and expense statements to the Debtors,[9] and the U.S. Trustee or the Creditors' Committee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted hereunder in the same manner as set forth in paragraph 27 of this Final Order; and (B) be granted replacement liens and a Superpriority Claim, in each case, of the same relative priority as enjoyed under the Prepetition Loan Documents, to the extent of the post-petition Diminution in Value of its respective Prepetition Collateral, subject, in each case, to the DIP Liens, the Carve-

---

[9]  Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.  Nothing herein shall prejudice the rights of the U.S. Trustee or the Creditors' Committee to object to such redaction.

Out and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30).

G.    *Sections 506(c) and 552(b).*  In light of (i) the DIP Administrative Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims in the Cases to the Carve Out, and (ii) the Prepetition Representatives' and the Prepetition Lenders' agreement to subordinate their respective liens in the Cases to the Carve Out and the DIP Liens, (A) the Prepetition Representatives and Prepetition Lenders are entitled to a waiver of any "equities of the case" claims under Section 552(b) of the Bankruptcy Code, and (B) the DIP Administrative Agent, DIP Lenders, Prepetition Representatives and Prepetition Lenders are entitled to a waiver of the provisions of Section 506(c) of the Bankruptcy Code (which waiver shall be without prejudice to the contention of the DIP Administrative Agent and DIP Lenders that Section 506(c) of the Bankruptcy Code does not apply to secured claims incurred pursuant to Section 364 of the Bankruptcy Code).

H.    *Business Judgment and Good Faith Pursuant to Section 364(e).*  Good cause has been shown for entry of this Final Order.  The relief requested herein is necessary, essential and appropriate for the continued survival and operation of the Debtors' businesses, absent which the Debtors' ability to maximize the value of their estates for the benefit of their creditors will be irreparably jeopardized.  The permission granted herein to enter into the DIP Loan Documents and obtain funds thereunder and use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that entry of this Final Order is therefore in the best interests of the Debtors, their estates and their creditors.  The terms and conditions of the DIP Facility and the DIP Loan Documents and the fees paid and to be paid thereunder are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the

18

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives and the Prepetition Lenders. Use of Cash Collateral and credit extensions under the DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the DIP Administrative Agent and the DIP Lenders are therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Final Order.

I.    *Notice.*  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors in accordance with the Interim Order, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the parties that received notice of the Interim Hearing; (ii) any party which has filed a request for notices with this Court; (iii) Counsel for the Creditors' Committee; (iv) the Prepetition Indenture Trustee; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; and (vii) any other party to whom notice is required to be given pursuant to Bankruptcy Rules 2002 and 4001 and Local Rules 2002-1(b) and 4001-2(c).

The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and the notice provided is good and sufficient to permit the relief set forth in this Final Order and no further notice need be given.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

19

IT IS HEREBY ORDERED that:

1.    <u>DIP Motion Approved</u>.  The DIP Motion is granted on a final basis, subject to the terms and conditions set forth in this Final Order.  All actions taken in connection with or in reliance on the Interim Order are hereby reaffirmed in full as if taken in connection with or in reliance on this Final Order.  This Final Order shall become effective immediately upon its entry.

2.    <u>Objections Overruled</u>.    The Creditors' Committee's objection to the Motion has been withdrawn.

## DIP Facility Authorization

3.    <u>Authorization of the DIP Financing</u>.    The DIP Financing (as defined below) is hereby approved.  The Debtors are expressly and immediately authorized and directed to execute and deliver the DIP Loan Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the DIP Loan Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens.  Subject to paragraph 27 of this Final Order, the Debtors are hereby authorized and directed to pay, in accordance with this Final Order, the principal, interest, fees, expenses, legal fees and other amounts described in the DIP Loan Documents and all other documents comprising the DIP Facility as such become due and payable without need to obtain further Court approval, including, without limitation, the DIP Lender Expenses, all to the extent provided in and in accordance with the terms of the DIP Loan Documents.  Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtors, which shall be enforceable against the Debtors and their estates in accordance with their terms.  Any DIP Loan

Document entered into by any Debtor prior to the date of entry of this Final Order in accordance with the terms and conditions of the Interim Order is hereby approved and ratified in full.

4. _Authorization to Borrow_. The DIP Facility will provide the Debtors and the Canadian Borrower with additional liquidity to fund operations during the Cases and the Canadian Proceedings in a total amount not to exceed $30,000,000 at any one time outstanding (the "DIP Financing"). The loans advanced under the DIP Facility will be divided between the Debtors and the Canadian Borrower.[10]   For avoidance of doubt, notwithstanding anything contained in this Final Order, at no time shall the outstanding amounts owed by the Debtors and the Canadian Borrower under the DIP Facility exceed $30,000,000, whether on account of the variance permitted under this Final Order, the Carve-Out or otherwise. Nothing in this paragraph shall amend or modify the DIP Lenders' obligation with respect to the Carve-Out.

5. _Use of Proceeds_. From the date of the Interim Order until the date of this Final Order, the Debtors have used advances of credit under the DIP Facility only for the purposes specifically set forth in the DIP Loan Documents and in compliance with the Approved Budget. Subject to paragraph 31 below, immediately upon entry of this Final Order, the Debtors are hereby authorized on a final basis to use the proceeds of the DIP Facility only for the following purposes (subject to the limitation on the aggregate amount set forth above in paragraph 4):   (a) immediate repayment of the remaining outstanding Prepetition Credit Agreement Obligations so as to consummate the Roll-Up; and (b) payment of (i) the Working Capital Needs; (ii) the Expenses; and (iii) the Adequate Protection Payments as set forth below. In no event shall payment of any of the amounts described in the immediately foregoing clause

---

[10]   The allocation of the proceeds of the loans advanced pursuant to the DIP Facility between the Debtors and the Canadian Borrower cannot be determined at this time, as such allocation is dependent on their respective business needs.  All borrowings under the DIP Facility by the Debtors will be used solely in respect of the Debtors' operations in the US.  All borrowings under the DIP Facility by the Canadian Borrower will be used solely in respect of the Canadian Borrower's operations in Canada.

(b) above exceed the amounts set forth in the Approved Budget for such payments, in each case subject to paragraph 18(c) below.

6.      Continuation of Prepetition Procedures.  Except as modified pursuant to the terms of this Final Order and the DIP Loan Documents, all prepetition practices and procedures for the payment and collection of proceeds of the Prepetition Collateral, the turnover of cash, and the delivery of property to the Prepetition Representatives are hereby approved and shall continue without interruption.

7.      Postpetition Liens.  To secure the DIP Obligations, effective immediately upon entry of this Final Order, pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Administrative Agent, for the benefit of itself and the DIP Lenders, is hereby granted, on a final basis and subject to the Carve-Out, the payment of the Pre-Sale Closing Professionals' Fees (in accordance with paragraph D(vii)) and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30), continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests and liens (collectively, the "DIP Liens") as follows:

(a)      pursuant to Section 364(c)(2) of the Bankruptcy Code, a first priority perfected lien on, and security interest in, all present and after acquired property of the Debtors not subject to a valid, perfected and unavoidable lien or security interest on the Petition Date including, without limitation, a pledge of any such property that is stock (or equivalent equity interest) of a foreign subsidiary of the Borrowers;

(b)      pursuant to Section 364(c)(3) of the Bankruptcy Code, a junior perfected lien on, and security interest in, all property of the Debtors that is subject to a valid, perfected and unavoidable lien or security interest on the Petition Date or subject to a valid and

unavoidable lien or security interest in existence on the Petition Date that is perfected subsequent thereto as permitted by Section 546(b) of the Bankruptcy Code, including, without limitation, a pledge by BII of 100% of its equity interest in the Borrowers; provided that any pledge of stock (or equivalent equity interest) of a foreign subsidiary of a Debtor shall be limited to 65% of the equity interest in each such foreign subsidiary if, in the judgment of the DIP Lenders, the pledge of more than 65% of such stock would have materially adverse tax consequences to the Debtors; and

        (c)     pursuant to Section 364(d)(1) of the Bankruptcy Code, and subject to any permitted liens to be approved by the DIP Lenders, a first priority, perfected senior priming lien on, and security interest in, all property of the Debtors that is subject to a lien or security interest on the Petition Date securing the Prepetition Credit Agreement and the Prepetition Indenture (the immediately foregoing subparagraphs (a) – (c), collectively, the "DIP Collateral").[11]

---

[11] For the avoidance of doubt, the DIP Collateral shall include, without limitation, all assets (whether tangible, intangible, real, personal or mixed) of the Borrowers and the Guarantors, whether now owned or hereafter acquired, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, all commercial tort claims and all other causes of action and claims, and all products and proceeds of any such assets; provided, however, that the DIP Collateral shall not include (X) any claim or cause of action under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions"), and all products and proceeds thereof (other than actions under Section 549 of the Bankruptcy Code) and (Y), except, in each case, as may otherwise be permitted under the Bankruptcy Code or other applicable law, (i) any lease, license, contract, property right or agreement to which any of the Debtors is a party or any of its rights or interest thereunder if and for so long as the grant of such Lien shall constitute or result in (A) the abandonment, invalidation or unenforceability of any right, title or interest of the Debtors therein, or (B) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract, property rights or agreement (other than to the extent that any such term would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the Uniform Commercial Code (or a successor provision or provisions) of any relevant jurisdiction or any other applicable law or principles of equity), provided that the proceeds realized from any of the foregoing shall not be deemed excluded from the grant of a lien, and provided further that to the extent such security interest at any time hereafter shall no longer be prohibited, the Debtors shall be deemed to have granted automatically and without any further action a lien in, such right as if such restriction had never existed, (ii) any United States intent-to-use trademark or service mark application to the extent that solely during the period in which the grant of security interest therein would impair the validity or enforceability of such intent-to-use application under applicable federal law, or (iii) any governmental permit or franchise that prohibits Liens on or collateral assignments of such permit or franchise (other than to the extent that any restriction on such assignment would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the Uniform

RLF1-3442712-1

8.      <u>DIP Lien Priority</u>.  Except for the Carve-Out and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30) and as expressly set forth herein, the DIP Liens shall be deemed perfected as of the Petition Date and shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceedings if the Cases are converted to cases under Chapter 7 of the Bankruptcy Code (any such cases, the "<u>Successor Cases</u>"), and shall be valid and enforceable (a) against any trustee or other estate representative appointed in the Cases, (b) against any trustee or other estate representative appointed in any Successor Cases, and/or (c) upon the dismissal of the Cases.  The DIP Liens shall not be subject to Sections 510, 549 (to the extent a successful action is brought against any DIP Lender), or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.  Notwithstanding the foregoing, the DIP Liens shall be subject to the Carve-Out, the payment of the Pre-Sale Closing Professionals' Fees (in accordance with paragraph D(vii)) and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30).

9.      <u>DIP Superpriority Claim</u>.  Upon entry of this Final Order, the DIP Administrative Agent and DIP Lenders are hereby granted, on a final basis, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases (the "<u>DIP Superpriority Claim</u>") for all DIP Obligations: (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in the Cases, at any time existing or arising, of any kind or nature

Commercial Code (or any successor provision or provisions) of any relevant jurisdiction or any other applicable law or principles of equity).

RLF1-3442712-1

whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 365, 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1114, or any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates and any trustee or other estate representative appointed in these Cases or any Successor Cases. Notwithstanding the foregoing, the DIP Superpriority Claim shall not include Avoidance Actions or the proceeds thereof (other than actions under Section 549 of the Bankruptcy Code) and shall further be subject to the Carve-Out, the payment of the Pre-Sale Closing Professionals' Fees (in accordance with paragraph D(vii)) and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30).

10. No Obligation to Extend Credit. The DIP Administrative Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents, including entry of this Final Order, (i) have been satisfied in full or (ii) waived by the DIP Administrative Agent in its sole discretion.

**Authorization to Use Cash Collateral**

11. Authorization to Use Cash Collateral. Subject to the terms and conditions of this Final Order, the DIP Facility and the DIP Loan Documents, the Debtors are authorized to use Cash Collateral in accordance with the Approved Budget until the Revolving Maturity Date. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as contemplated herein by the 363 Sale (which sale

25

shall be subject to separate approval of this Court) and as permitted in the DIP Loan Documents and in accordance with the Approved Budget.

     12.    <u>Adequate Protection Liens.</u>

     (a)    <u>Prepetition Credit Agreement Lenders' Adequate Protection Liens.</u> Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Administrative Agent and Prepetition Credit Agreement Lenders in the Prepetition Collateral to the extent of any Diminution in Value of such interests in the Prepetition Collateral on account of, among other things, the granting of the DIP Liens, the Debtors' use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, market value decline of collateral, the priming of the Prepetition Liens and the imposition of the automatic stay, the Debtors hereby grant on a final basis to the Prepetition Administrative Agent, for the benefit of itself and the Prepetition Credit Agreement Lenders, continuing, valid, binding, enforceable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition Credit Agreement Lenders' Adequate Protection Liens</u>") to the extent of any Diminution in Value until such time as the Roll-Up has been completed, <u>provided, however,</u> that the Prepetition Credit Agreement Lenders' Adequate Protection Liens shall (i) be subject and subordinate only to (A) the DIP Liens and any liens on the DIP Collateral that are senior to, or *pari passu* with, the DIP Liens and (B) the Carve-Out, the Pre-Sale Closing Professionals' Fees (in accordance with paragraph D(vii)) and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30), and (ii) enjoy the relative priorities set forth in subparagraph 12(c) below. The Prepetition Credit Agreement Lenders' Adequate Protection Liens shall not include any liens on Avoidance Actions or the proceeds thereof (other than actions under Section 549 of the Bankruptcy Code).

26

RLF1-3442712-1

(b)    <u>Prepetition Senior Noteholders' Adequate Protection Liens</u>. Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Indenture Trustee and Prepetition Senior Noteholders in the Prepetition Collateral to the extent of any Diminution in Value of such interests in the Prepetition Collateral on account of, among other things, the granting of the DIP Liens, the Debtors' use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, market value decline of collateral, the priming of the Prepetition Liens and the imposition of the automatic stay, the Debtors hereby grant on a final basis to the Prepetition Indenture Trustee, for the benefit of itself and the Prepetition Senior Noteholders, continuing, valid, binding, enforceable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition Senior Noteholders' Adequate Protection Liens</u>" and, together with the Prepetition Credit Agreement Lenders' Adequate Protection Liens, the "<u>Adequate Protection Liens</u>") to the extent of any Diminution in Value until such time as the Prepetition Indenture Obligations under the Prepetition Indenture are indefeasibly paid in full, <u>provided</u>, <u>however</u>, that the Prepetition Senior Noteholders' Adequate Protection Liens shall (i) be subject and subordinate only to (A) the DIP Liens and any liens on the DIP Collateral that are senior to, or *pari passu* with, the DIP Liens and (B) the Carve-Out, the Pre-Sale Closing Professionals' Fees (in accordance with paragraph D(vii)) and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30), and (ii) enjoy the relative priorities set forth in subparagraph 12(c) below.  The Prepetition Senior Noteholders' Adequate Protection Liens shall not include any liens on Avoidance Actions or the proceeds thereof (other than actions under Section 549 of the Bankruptcy Code).

RLF1-3442712-1

(c)    <u>Priority of Adequate Protection Liens</u>.    For so long as the Prepetition Credit Agreement Lenders and the Prepetition Senior Noteholders hold Prepetition Credit Agreement Lenders' Adequate Protection Liens and Prepetition Senior Noteholders' Adequate Protection Liens, respectively, such liens shall enjoy the same priority with respect to each other as do the Prepetition Credit Agreement Liens and the Prepetition Indenture Liens. Except for the Carve-Out and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30) and otherwise as expressly provided herein, the Adequate Protection Liens shall be deemed perfected as of the Petition Date and not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in the Cases, and shall be valid and enforceable (a) against any trustee or other estate representative appointed in the Cases, (b) against any trustee or other estate representative appointed in any Successor Cases, and/or (c) upon the dismissal of the Cases. The Adequate Protection Liens shall not be subject to Sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens. The Adequate Protection Liens shall not include any liens on Avoidance Actions or the proceeds thereof (other than actions under Section 549 of the Bankruptcy Code).

13.    <u>Adequate Protection Superpriority Claims</u>.    Upon entry of this Final Order and solely to the extent of any Diminution in Value, the (a) Prepetition Administrative Agent and Prepetition Credit Agreement Lenders and (b) Prepetition Indenture Trustee and Prepetition Senior Noteholders are hereby granted on a final basis allowed superpriority administrative expense claims in the Cases (the "<u>Adequate Protection Superpriority Claims</u>"), as provided for in Section 507(b) of the Bankruptcy Code, for all Prepetition Obligations:  (i) except as set forth

herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in the Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 365, 503(b), 507(a), 546(c), 546(d), 726, 1114, or any other provision of the Bankruptcy Code; and (ii) which shall at all times be senior to the rights of the Debtors and their estates and any trustee or other estate representative appointed in these Cases or any Successor Cases.  Notwithstanding the foregoing, the Adequate Protection Superpriority Claims shall be immediately junior to the DIP Superpriority Claim and shall be subject to the Carve-Out, the payment of the Pre-Sale Closing Professionals' Fees (in accordance with paragraph D(vii)) and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30).  The Adequate Protection Superpriority Claims shall not include any claims for the Avoidance Actions or the proceeds thereof (other than actions under Section 549 of the Bankruptcy Code).

   14. <u>Adequate Protection Payments and Protections</u>.  As further adequate protection for the Prepetition Lenders, the Debtors are authorized and directed on a final basis to provide adequate protection to (a) the Prepetition Administrative Agent, for the benefit of itself and the Prepetition Credit Agreement Lenders, until such time as the Roll-Up has been completed or, in the event that repayment in full of the Prepetition Credit Agreement Obligations is not approved in the Final Order, until such time as the Prepetition Credit Agreement Obligations are indefeasibly paid in full and (b) the Prepetition Indenture Trustee, for the benefit of itself and the Prepetition Senior Noteholders, until such time as the Prepetition Indenture Obligations are indefeasibly paid in full, in each case, in the form of payments in cash on a current basis of all reasonable fees, costs and expenses of the professionals retained by the

RLF1-3442712-1

Prepetition Lenders (including, without limitation, their financial advisor and primary, Delaware and Canadian counsel).

        15.    <u>Section 507(b) Reservation</u>.  Except as expressly provided for in this Final Order, nothing herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Prepetition Representatives or the Prepetition Lenders hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases.

**<u>Provisions Common to DIP Financing and Use of Cash Collateral Authorizations</u>**

        16.    <u>Sale Milestones</u>.  The Debtors' use of the proceeds of the DIP Facility and of the Cash Collateral, is contingent on the following milestones for the 363 Sale:  (a) a motion pursuant to Section 363 of the Bankruptcy Code to authorize the 363 Sale and to approve procedures and bid protections to effect such sale (in form and substance reasonably satisfactory to the DIP Administrative Agent, the "<u>Bid Procedures Motion</u>") having been filed by no later than two (2) business days following the Petition Date; (b) an order approving the Bid Procedures Motion having been entered by no later than eighteen (18) days following the Petition Date; (c) bids for the 363 Sale being due by no later than forty-one (41) days following the Petition Date; (d) if applicable, an auction pursuant to the Bid Procedures Motion (the "<u>Auction</u>") having occurred by no later than forty-three (43) days following the Petition Date); (e) the hearing to confirm the 363 Sale having been concluded and the order confirming the 363 Sale having been entered by no later than forty-five (45) days following the Petition Date; and (f) the 363 Sale having been consummated by no later than sixty (60) days following the Petition Date; <u>provided</u> that failure to adhere to the foregoing sale milestones in (b) and (e) solely because of a Court scheduling issue shall not constitute an Event of Default or lead to

discontinuance of the Debtors' ability under this Final Order to use proceeds of the DIP Facility or Cash Collateral so long as the Court shall have scheduled the required sale milestone within three (3) days of such milestone deadline; and it being understood that the Debtors shall undertake all commercially reasonable efforts to consummate the 363 Sale as expeditiously as possible, including, without limitation, the filing of appropriate pleadings satisfactory in form and substance to the DIP Administrative Agent seeking shorter time periods than listed above (i) for the scheduling of the hearings on the Bid Procedures Motion and to confirm the 363 Sale, and (ii) for the submission of competing bids for the 363 Sale and the holding of the Auction, taking into full account the scope and breadth of the Sale Process conducted by Houlihan Lokey prior to the Petition Date.  Unless proceeds of the 363 Sale (minus the Wind-Up Amount and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30)) are transferred to the party designated by the DIP Administrative Agent within two (2) business days of the consummation of such sale, all authority to use Cash Collateral shall cease.

17.    Amendments.  The Debtors are hereby authorized, without further notice, motion, application to, order of, or hearing before, this Court, to enter into agreements with the DIP Administrative Agent providing for any non-material modifications to DIP Loan Documents or of any other modifications to the DIP Loan Documents necessary to conform the DIP Loan Documents to this Final Order; provided, however, that notice of any non-material or other modification or amendment to the DIP Loan Documents shall be provided to Counsel to the Creditors' Committee, the U.S. Trustee, counsel to the DIP Administrative Agent, counsel to the Prepetition Administrative Agent, the Prepetition Indenture Trustee, and any entity whose rights are affected by the modification, each of whom shall have ten (10) calendar days from the date of such notice within which to object in writing to such modification or amendment.  If the

31

Creditors' Committee, the U.S. Trustee or an affected entity timely objects to any modification or amendment to the DIP Loan Documents, then such modification or amendment shall only be permitted pursuant to order of this Court.  All material modifications shall be filed with the Bankruptcy Court.

              18.    <u>Budget</u>.

              (a)    <u>Generally</u>.  Attached to the Interim Order as <u>Exhibit 1</u> is a 13-week budget (the "<u>Initial Approved Budget</u>") which reflects the Debtors' anticipated available cash receipts and cash disbursements, cash on hand and commitments under the DIP Facility on a weekly basis.  The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors and approved in writing pursuant to the applicable terms of the DIP Agreement by the DIP Administrative Agent (each such additional approved budget, a "<u>Supplemental Approved Budget</u>"), in each case without further notice, motion or application to, order of, or hearing before, this Court; <u>provided</u>, <u>however</u>, that the Debtors shall file copies of each Supplemental Approved Budget with the Court within two (2) business days after its approval by the DIP Administrative Agent.  If the Creditors' Committee, the U.S. Trustee or an affected party files an objection to any Supplemental Approved Budget within five (5) business days of the filing of such Supplemental Approved Budget , then such Supplemental Approved Budget shall only be permitted pursuant to order of this Court.  In such case, however, the as-filed Supplemental Approved Budget shall constitute the Approved Budget until it is overruled by the Court. The Initial Approved Budget, together with any Supplemental Approved Budgets, shall constitute the "<u>Approved Budget</u>."

(b)    <u>Budget Reporting</u>.    The Debtors acknowledge and agree that pursuant to the terms of the DIP Loan Documents they are required, among other things, to provide to the DIP Administrative Agent, so as actually to be received by 5:00 p.m. (New York time) on Wednesday of each week, weekly variance reports for the preceding weekly period and on a cumulative basis from the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the Approved Budget, in substantially the same form and detail as delivered pursuant to the Prepetition Credit Agreement.

(c)    <u>Budget Covenants</u>.    The Debtors acknowledge and agree that, for all purposes in the DIP Loan Documents, the Debtors' use of cash in accordance with the Approved Budget, and their ability to draw under the DIP Facility, shall be calculated by reference to the line item entitled "Ending Revolver" in the Approved Budget for the relevant period; <u>provided</u> that to the extent that the actual "Ending Cash On Hand" for the relevant period is less than the amount budgeted for such period in the line item entitled "Ending Cash On Hand" in the Approved Budget, the line item entitled "Ending Revolver" in the Approved Budget shall be deemed reduced by such difference, subject to the variance described below. The Debtors acknowledge and agree that (i) variances in the line item entitled "Ending Revolver" in the Approved Budget (as calculated in the immediately preceding sentence) shall not exceed $1,000,000 in the aggregate (cumulative for the period of the Approved Budget for all borrowers under the DIP Facility), as permitted by the provisions of the DIP Agreement, and (ii) other violations of the terms and condition of this paragraph 18 shall constitute an Event of Default under and as defined in the DIP Agreement. For avoidance of doubt, notwithstanding anything contained in this Final Order, at no time shall the total amount outstanding (including outstanding letters of credit) under the DIP Facility exceed $30,000,000. With regard to

professionals' fees only, the Approved Budget shall be subject to both "carry-forward" and "carry-back" of such expenses, such that: (1) if the relevant professional or group of professionals does not accrue all of the amounts allocated in one budget week it may use the remainder of such allocated funds in future weeks; and (2) if the relevant professional or group of professionals accrues more than the allocated, but unused, amount in a budget week it may use excess allocated funds from past or future weeks, in each case subject to allowance of such professional fees by the Court; provided that the payments to each such professional shall not exceed the aggregate budgeted amount for such professional in the "Total Fees" column of the Fee Schedule and shall be in accordance with this paragraph 18.

19.    Modification of Automatic Stay.    Subject to paragraph 25 below, the automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before this Court.

20.    Perfection of DIP Liens and Adequate Protection Liens.    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, without limitation, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens, or to entitle the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives or the Prepetition Lenders to the priorities granted

34

herein.  Notwithstanding the foregoing, the DIP Administrative Agent and each Prepetition Representative are authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Administrative Agent and the Prepetition Representatives all such financing statements, mortgages, notices and other documents as the DIP Administrative Agent or each Prepetition Representative may reasonably request.  The DIP Administrative Agent and the Prepetition Representatives, each in their discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notice of lien or similar instrument, and the subject filing or recording officer is authorized to file or record such copy of this Final Order.  For the avoidance of doubt, the automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby lifted as necessary to allow the DIP Administrative Agent and the Prepetition Representatives to take the actions described in this paragraph.

21.    Proceeds of Subsequent Financing.    If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) or in violation of the DIP Loan Documents or the Prepetition Credit Agreements at any time

RLF1-3442712-1

prior to the indefeasible repayment in full in cash of all DIP Obligations and Prepetition Obligations, the cancellation, backing or cash collateralization, in a manner satisfactory to the issuer thereof, of letters of credit previously issued, and the termination of the DIP Administrative Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, and such facilities are secured by any Collateral, then, unless otherwise agreed by the DIP Administrative Agent in writing in its sole discretion and subject to paragraph 31 of this Final Order (a) all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Administrative Agent to be applied pursuant to the provisions of the DIP Agreement; and (b) after payment in full of all obligations evidenced by the DIP Loan Documents, all the cash proceeds derived from such credit or debt shall (i) prior to the completion of the Roll-Up, immediately be turned over to the Prepetition Representatives to be applied pursuant to the provisions of the Prepetition Credit Agreement, the Prepetition Indenture and the Lien Subordination and Intercreditor Agreement dated as of November 15, 2007, among BII, the Borrowers and the Prepetition Representatives, and (ii) subsequent to the completion of the Roll-Up, immediately be turned over the Prepetition Indenture Trustee to be applied pursuant to the provisions of the Prepetition Indenture. Notwithstanding the foregoing, the Sellers Termination Fee and/or Expense Reimbursement will be paid from any such proceeds before any DIP Obligations pursuant to the terms of the Asset Purchase Agreement and paragraph 30 hereof.

22.     <u>Maintenance of Collateral</u>.   Until the earlier of (a) the indefeasible repayment in full in cash of all DIP Obligations and Prepetition Obligations, the cancellation, backing or cash collateralization, in a manner satisfactory to the issuer thereof, of letters of credit previously issued, and the termination of the DIP Administrative Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, (b) the resolution of the Cases, or (c) the

36

closing of the sale of the applicable Collateral, the Debtors shall: (i) insure the Collateral as required under the DIP Agreement and the Prepetition Loan Documents; and (ii) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court which has first been agreed to by the DIP Administrative Agent or as otherwise required by the DIP Loan Documents.

23.    Disposition of Collateral.    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral other than in the ordinary course of business without the prior written consent of the DIP Administrative Agent and DIP Lenders or the Prepetition Representatives, as applicable, (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Administrative Agent and DIP Lenders or the Prepetition Representatives, as applicable, or from any order of this Court), except to the extent contemplated herein by the 363 Sale (which sale shall be subject to separate approval of this Court) or as permitted by the terms of the DIP Loan Documents.    To the extent that any Collateral is sold, transferred, leased, encumbered or otherwise disposed of (a) with the prior written consent of the DIP Administrative Agent and DIP Lenders or the Prepetition Representatives, as applicable, (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Administrative Agent and DIP Lenders or the Prepetition Representatives, as applicable, or from any order of this Court), (b) as contemplated by the 363 Sale (which sale shall be subject to separate approval of this Court), or (c) as contemplated by the terms of the DIP Loan Documents, any proceeds of such sale, lease or other disposition of the Collateral, including in connection with the 363 Sale, shall be applied in a manner consistent with the DIP Loan Documents and the Prepetition Loan Documents, as applicable; provided that, upon consummation of the 363 Sale, (x) the Wind-Up Amount will be provided to fund the

37

reasonable and necessary expenses in connection with the wind-up of the Cases and the Canadian Proceedings, (y) the Sellers Termination Fee and/or Expense Reimbursement will be paid pursuant to the terms of the Asset Purchase Agreement and the Bid Procedures Order, and (z) the DIP Lenders shall be obligated to pay the Pre-Sale Closing Professionals' Fees and expenses in accordance with paragraph D(vii) above.

24.    <u>Revolving Maturity Date</u>.   On the Revolving Maturity Date, (a) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate, and all letters of credit previously issued shall be cash collateralized, backed or cancelled in a manner satisfactory to the issuer thereof; (b) all authority to use Cash Collateral shall cease; and (c) all Cash Collateral as of such date shall be promptly paid to the DIP Administrative Agent or the Prepetition Representatives, as applicable.   For purposes of this Final Order, the "<u>Revolving Maturity Date</u>" shall mean the Revolving Maturity Date, as defined in the DIP Agreement.

25.    <u>Rights and Remedies Upon Event of Default</u>.   Subject to the terms of the DIP Loan Documents, immediately upon the occurrence and during the continuation of an Event of Default (as defined in the DIP Loan Documents), the DIP Administrative Agent may, and at the direction of the Required Lenders (as defined in the DIP Agreement) shall: (a) terminate all commitments to extend credit under the DIP Facility; (b) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable; and (c) have the right to exercise all available remedies under the DIP Loan Documents, including, without limitation, the right to realize on all DIP Collateral, subject to, in the case of this subparagraph (c), compliance with the prior notice requirement set forth herein.   In the event that the DIP Administrative Agent seeks to exercise its rights in accordance with the foregoing subparagraph (c), the DIP

Administrative Agent shall provide five (5) business days' prior notice (the "Remedies Notice Period") of its intent to exercise such remedies under this Final Order and the DIP Loan Documents to (i) the Debtors and their counsel; (ii) Counsel to the Creditors' Committee; and (iii) the U.S. Trustee. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay as to all of the DIP Lenders and the Prepetition Lenders shall automatically be terminated at the end of the Remedies Notice Period without further notice to or order of the Court. Upon expiration of the Remedies Notice Period, the DIP Administrative Agent and, with the consent of the DIP Administrative Agent, the Prepetition Representatives, shall be permitted to exercise all rights and remedies set forth in the DIP Credit Agreement, the DIP Loan Documents, the Prepetition Loan Documents and as otherwise available at law without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code, or otherwise. Upon such enforcement by the DIP Agent and/or the Prepetition Representatives (with the consent of the DIP Agent), the Debtors shall cooperate in the disposition of the DIP Collateral and shall not otherwise interfere or actively encourage others to interfere with the DIP Agent's and/or the Prepetition Representatives' enforcement of their rights. Notwithstanding anything to the contrary contained in this Final Order, all of the rights and remedies of the DIP Administrative Agent and DIP Lenders under the DIP Loan Documents shall be senior to any rights and remedies of the Prepetition Representatives and the Prepetition Lenders under this Final Order or the Prepetition Loan Documents.

26.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order. Based upon the terms of this Final Order and the DIP Administrative Agent's, the DIP Lenders', the Prepetition Representatives' and the Prepetition

Lenders' consent thereto, the payments, liens, security interests, superpriority claims and other protections provided in the Interim Order and this Final Order are fair and reasonable to protect the interests of the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives and the Prepetition Lenders.

The DIP Administrative Agent, DIP Lenders, Prepetition Representatives and Prepetition Lenders have acted in good faith in connection with the Interim Order and this Final Order , and their reliance on this Final Order is in good faith.  Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Administrative Agent and the DIP Lenders are entitled to the protections provided in Section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made in the Interim Order or this Final Order, any lien, claim or priority authorized or created hereby, or any Roll-Up effectuated prior to the date of such modification, amendment or vacatur; provided that the Roll-Up shall be subject to paragraph 31 hereof.  Any liens or claims granted to the DIP Administrative Agent and the DIP Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

27.    DIP and Other Expenses.    The Debtors are authorized to pay all reasonable out-of-pocket expenses of the DIP Administrative Agent and the DIP Lenders in connection with the DIP Facility, as provided in the DIP Loan Documents, whether or not the

transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees and fees and expenses of other consultants without further approval by this Court, other than where an objection to such out-of-pocket expenses has been filed, as set forth below. Professionals for the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Credit Agreement Lenders shall not be required to comply with the U.S. Trustee fee guidelines, however, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide copies of its fee and expense statements to the U.S. Trustee and Counsel for the Creditors' Committee contemporaneously with the delivery of such fee and expense statements to the Debtors.[12] The U.S. Trustee or the Creditors' Committee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted hereunder, provided that any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel for the party seeking reimbursement no later than ten (10) business days after the objecting party's receipt of the applicable professional fee invoice; and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses, provided further, however, that the Debtors shall promptly pay all amounts that are not the subject of any such objection. Any hearing on an objection to payment of any fees, costs and expenses of the DIP Administrative Agent, DIP Lenders, the Prepetition Administrative Agent, or Prepetition Credit Agreement Lenders set forth in a professional fee invoice shall be limited to the reasonableness

---

[12] Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. Nothing in this Final Order shall waive or prejudice the U.S. Trustee's or the Creditors' Committee's right to object to the redaction.

or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection.

28.    <u>Proofs of Claim</u>.  The DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives, and the Prepetition Lenders will not be required to file proofs of claim in the Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Cases to the contrary, the Prepetition Administrative Agent on behalf of itself and the Prepetition Credit Agreement Lenders, and the Prepetition Indenture Trustee on behalf of itself and the Prepetition Senior Noteholders, are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in the Cases for any claim allowed herein.  Any proof of claim filed by the Prepetition Administrative Agent or the Prepetition Indenture Trustee shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Credit Agreement Lenders or Prepetition Senior Noteholders, respectively.  Any order entered by the Court in relation to the establishment of a bar date in the Cases shall not apply to the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives, or the Prepetition Lenders.

29.    <u>Carve-Out; Payment of Case Professionals and Expenses Incurred</u>.

(a)    <u>Carve-Out</u>.  As used in this Final Order, the "<u>Carve-Out</u>" means: (i) quarterly fees required to be paid pursuant to 28 U.S.C. §1930(a)(6); (ii) any fees payable to the Clerk of the Bankruptcy Court; and (iii) after the occurrence of a Carve-Out Event (as defined below), an amount equal to (X) the reasonable fees and expenses incurred in the Cases by professionals retained by the Debtors or the Creditors' Committee (the "<u>Permitted Professional Fees</u>") prior to the occurrence of a Carve-Out Event but not paid on or before the

42

date of such Carve-Out Event and (Y) $500,000 for payment of Permitted Professional Fees incurred after the occurrence of a Carve-Out Event, in each case, to the extent subsequently allowed by the Bankruptcy Court, and in each case subject to the rights of the DIP Administrative Agent, the DIP Lenders and any other party in interest to object to the allowance of any such fees and expenses.  In no event shall the amount paid as part of the Carve-Out described in clause (iii)(X) above to any professional firm retained by either the Debtors or the Creditors' Committee (A) exceed the pro rata portion of the amount set forth for such firm in the "Total Fees" column in the Fee Schedule (calculated by dividing (i) the number of weeks covered by the Approved Budget taking place prior to the Carve-Out Event by (ii) 13) or (B) cause the amount borrowed prior to the date of the Carve-Out Event plus the amount advanced on account of the Carve-Out Event to exceed the aggregate amount budgeted through the date of the Carve-Out Event.  For the avoidance of doubt, notwithstanding anything contained herein, in no event shall the Carve-Out apply in the case of a consummated 363 Sale; instead, the Pre-Sale Closing Professionals' Fees shall be paid in accordance with paragraph D(vii) above.

> (b) <u>No Direct Obligation to Pay Professional Fee and Disbursements</u>. None of the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives, or the Prepetition Lenders shall be responsible for the direct payment or reimbursement of any Permitted Professional Fees under any chapter of the Bankruptcy Code.

> (c) <u>Payment of Allowed Professional Fees Prior to the Carve-Out Event</u>. Prior to a Carve-Out Event, the Debtors shall be permitted to pay the Permitted Professional Fees pursuant to the Approved Budget and an order of the Bankruptcy Court, as the same may be due and payable, and such payments shall be part of, but not reduce, the Carve-Out.

(d)    <u>Payment of Allowed Professional Fees Subsequent to the Carve-Out Event</u>.  Upon the first date on which the DIP Administrative Agent (at the direction of the Required Lenders) is entitled to exercise remedies under the DIP Facility (the "<u>Carve-Out Event</u>") and provides written notice thereof to the Debtors and Counsel to the Creditors' Committee (the "<u>Carve-Out Event Notice</u>"), the right of the Debtors to pay Permitted Professional Fees outside the Carve-Out shall terminate.  After receipt of the Carve-Out Event Notice, the Debtors shall provide immediate notice by facsimile to all applicable professionals informing them that a Carve-Out Event has occurred and further advising them that the Debtors' ability to pay such professionals is subject to and limited by the Carve-Out.

30.    <u>Sellers Termination Fee and Expense Reimbursement</u>.  The DIP Lenders have consented to the carve out from the DIP Liens and the Adequate Protection Liens of, and the priming of the DIP Superpriority Claim and the Adequate Protection Superpriority Claims by, the Sellers Termination Fee and/or Expense Reimbursement (each as defined in the APA) to the extent (a) such amounts are allowed by the Court in the Bid Procedures Order and (b) the Buyer (as defined in the APA) is entitled to payment of such amounts pursuant to the terms of the APA, and the Bid Procedures Order.

31.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    Nothing in any of the DIP Loan Documents shall prejudice the rights of the Creditors' Committee and any other party in interest with requisite standing, other than the Debtors (who have expressly waived their rights in this regard) to: (i) seek to object to or to challenge the findings herein, the Debtors' Stipulations, or any other stipulations herein, including, but not limited to, those in relation to (A) the validity, extent, priority,

44

characterization, enforceability or perfection of the security interests and liens of the Prepetition Representatives with respect to the Prepetition Collateral, or (B) the validity, enforceability, priority, characterization, fully-secured status or amount of the Prepetition Obligations evidenced by the Prepetition Loan Documents; or (ii) otherwise assert any claim or cause of action, including, without limitation, any derivative action, against the Prepetition Representatives and the Prepetition Lenders. All such objections, challenges, claims or causes of action described in the preceding clauses (i) and (ii) are collectively defined as the "Challenges". For the avoidance of doubt, the Debtors have herein expressly waived any and all rights to bring any Challenge.

Any party, including the Creditors' Committee, must commence an adversary proceeding or contested matter, as required by the applicable Bankruptcy Rules, seeking to bring any Challenge by no later than ninety (90) calendar days from the date of the appointment of the Creditors' Committee by the U.S. Trustee (the "Challenge Period").

(b)    The Challenge Period may only be extended with the written consent of the Prepetition Representatives and the Prepetition Lenders or by order of the Court.

(c)    Except to the extent asserted in an adversary proceeding or contested matter, as required by the applicable Bankruptcy Rules, filed during the Challenge Period, upon the expiration of such applicable Challenge Period, to the extent not otherwise waived or barred: (i) any and all Challenges shall be deemed to be forever waived and barred; and (ii) all of the Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity of the Prepetition Representatives' and Prepetition Lenders' claims, liens, and interests, of any nature, under the Prepetition Loan Documents, or otherwise incorporated or set forth in this Final Order, shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other

45

parties in interest in the Cases.  In particular, the Prepetition Obligations shall constitute allowed claims, not subject to subordination, for all purposes in these Cases and the Prepetition Representatives' and Prepetition Lenders' liens on and security interests in the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest.  Upon a successful Challenge brought pursuant to this paragraph, the Court may fashion any appropriate remedy.

(d)     For purposes of subparagraphs (a) through (c) above, any trustee or estate representative appointed in these Cases or any Successor Cases shall, until the expiration of the Challenge Period described above and thereafter for the duration of any litigation commenced during the Challenge Period by the filing of a complaint described in the foregoing subparagraphs (a) through (c) (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party "other than the Debtors" and shall not, for purposes of such litigation, be bound by the acknowledgements, admissions and confirmations of the Debtors in this Final Order.

(e)     The Creditors' Committee is hereby granted standing, without further order of the Court, to file and prosecute any Challenge on behalf of the Debtors' estates.

32.     <u>Limitations on the DIP Facility, the Collateral, the Cash Collateral and the Carve-Out</u>.

(a)     The DIP Facility, the DIP Collateral, the Cash Collateral and the Carve-Out may not be used in connection with:  (i) preventing, hindering, or delaying any of the DIP Administrative Agent's or the DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default (as defined in the DIP Agreement) has occurred (other than with respect to rights otherwise granted herein with respect to the Remedies Notice Period); (ii)

using or seeking to use Cash Collateral or, except to the extent contemplated herein by the 363 Sale (which sale shall be subject to separate approval of this Court) or as permitted by the terms of the DIP Loan Documents, selling or otherwise disposing of DIP Collateral, in each case without the consent of the DIP Administrative Agent and the DIP Lenders; or (iii) except to the extent permitted by the terms of the DIP Loan Documents, incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Administrative Agent and the DIP Lenders.

(b)    The DIP Facility, the Collateral, the Cash Collateral and the Carve-Out also may not be used in connection with: (i) objecting, challenging, litigating, contesting, opposing, marshaling or seeking to subordinate or recharacterize in any way any claims, liens, or Collateral (including Cash Collateral) held by or on behalf of any of the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives or the Prepetition Lenders; (ii) asserting, commencing or prosecuting any claims or causes of action of any kind or nature whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against any of the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives or the Prepetition Lenders, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees, in each case with respect to this Final Order, the DIP Loan Documents or Prepetition Loan Documents or the transactions contemplated therein or thereby; or (iii) prosecuting an objection to, challenging, or contesting or opposing in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, character or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Obligations or the Prepetition Liens, or any other rights or interests of any of the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives or the Prepetition Lenders.  Notwithstanding the

RLF1-3442712-1

foregoing, the Collateral and the Carve-Out are permitted to be used to reimburse the Creditors' Committee in connection with an investigation by such committee of the liens and security interests granted to the Prepetition Representatives and Prepetition Lenders; provided, that the amount of such reimbursement shall be capped at $100,000 (the "Investigation Reimbursement Costs"). For the avoidance of doubt, the line item in the Approved Budget for the fees and expenses of counsel to the Creditors' Committee shall include the Investigation Reimbursement Costs.

(c)     Neither the Carve-Out nor any Collateral shall be available to pay any trustee or estate representative appointed in these Cases or in any Successor Cases or to pay the fees and expenses of any professionals retained by any such trustee or estate representative.

33.     Section 506(c) Claims.   Upon entry of this Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Administrative Agent, DIP Lenders, Prepetition Representatives, Prepetition Lenders or any of their respective claims, or the interests of the DIP Administrative Agent, DIP Lenders, Prepetition Representatives or Prepetition Lenders in the Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Administrative Agent, DIP Lenders, Prepetition Representatives or the Prepetition Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

34.     No Marshaling/Applications of Proceeds.   The DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives and the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

35.    <u>Section 552(b)</u>.    Upon entry of this Final Order, the Prepetition Representatives and the Prepetition Lenders shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Representatives and the Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

36.    <u>Discharge Waiver</u>.    None of the DIP Obligations shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, or cash collateralized in the case of letters of credit, on or before the effective date of a confirmed plan of reorganization.    The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash, on or prior to the earlier to occur of the effective date of such plan of reorganization or sale and the Scheduled DIP Termination Date, of all DIP Obligations and the cancellation, backing or cash collateralization, in a manner satisfactory to the issuer thereof, of letters of credit previously issued unless the DIP Administrative Agent and Prepetition Representatives have otherwise consented in writing to such plan or sale.

37.    <u>Rights Preserved</u>.    Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Administrative Agent's, DIP Lenders', Prepetition Representatives' or the Prepetition Lenders' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Administrative Agent, DIP Lenders, Prepetition

Representatives and Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request a modification of the automatic stay of Section 362 of the Bankruptcy Code; (ii) request modified or additional adequate protection; (iii) request dismissal of the Cases, conversion of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers; or (iv) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Administrative Agent, DIP Lenders, Prepetition Representatives or Prepetition Lenders. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Creditors' Committee's or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

38.    <u>No Waiver by Failure to Seek Relief</u>.    The failure of the DIP Administrative Agent, DIP Lenders, Prepetition Representatives or the Prepetition Lenders to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Administrative Agent, DIP Lenders, Prepetition Representatives and the Prepetition Lenders.

39.    <u>Binding Effect of Final Order</u>.    Immediately upon execution by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives, the Prepetition Lenders, all other creditors of the Debtors, the Creditors'

Committee or other committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other estate representative appointed in these Cases or any Successor Cases.

40.    No Modification of Final Order.  Until and unless the DIP Obligations and the Prepetition Obligations have been indefeasibly paid in full in cash, and all letters of credit previously issued shall have been cancelled, backed, or cash collateralized in a manner satisfactory to the issuer thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility shall have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Administrative Agent and the Prepetition Representatives, (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in the Cases, equal or superior to the DIP Superpriority Claim or the Adequate Protection Superpriority Claims, other than the Carve-Out and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30); (b) without the prior written consent of the DIP Administrative Agent and the Prepetition Representatives, any order allowing use of Cash Collateral resulting from Collateral; (c) without the prior written consent of the DIP Administrative Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Loan Documents; or (d) without the prior written consent of the Prepetition Representatives, any lien on any of the

Collateral with priority equal or superior to the Prepetition Liens or the Adequate Protection Liens. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Administrative Agent and the Prepetition Representatives and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Administrative Agent or Prepetition Representatives.

41.    <u>Setoff and Recoupment</u>.    Notwithstanding anything to the contrary contained herein, nothing in this Final Order shall limit or impair the nature, extent, validity and/or priority of rights, if any, of any party in interest in the Cases under Bankruptcy Code sections 545, 546(c), and 553 and/or the equitable doctrine of recoupment. In addition, nothing in this Final Order shall impair or prejudice a party in interest's right to object to any claim for relief made under sections 545, 546(c), and 553 and/or the equitable doctrine of recoupment.

42.    <u>Limits on Lender Liability</u>.    Subject to paragraph 31 above, nothing in any of the DIP Loan Documents, the Prepetition Credit Agreement Documents or any other documents related to the DIP Facility shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives or the Prepetition Lenders of any liability for any claims arising from any and all activities by the Debtors in the operation of their businesses following the Petition Date.

43.    <u>Final Order Controls</u>.    In the event of any inconsistency between the terms and conditions of any of the other DIP Loan Documents and this Final Order, the provisions of this Final Order shall govern and control.

44.    <u>Survival</u>.    The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan

52

of reorganization in the Cases; (b) converting the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) to the extent permitted by applicable law, dismissing the Cases; or (d) pursuant to which this Court abstains from hearing the Cases. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Administrative Agent, DIP Lenders, the Prepetition Representatives and the Prepetition Lenders pursuant to the DIP Loan Documents and/or the Prepetition Loan Documents, notwithstanding the entry of any such order, shall continue in full force and effect in the Cases or, to the extent permitted by applicable law following dismissal of the Cases, and shall maintain their priority as provided by the DIP Loan Documents until: (i) in respect of the DIP Credit Agreement, all the DIP Obligations, pursuant to the DIP Loan Documents, have been indefeasibly paid in full in cash and all letters of credit previously issued shall have been cancelled, backed or cash collateralized in a manner satisfactory to the issuer thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated, (ii) in respect of the Prepetition Credit Agreement, all of the Prepetition Credit Agreement Obligations have been indefeasibly paid in full in cash, and (iii) in respect of the Prepetition Indenture, all of the Prepetition Indenture Obligations have been indefeasibly paid in full in cash. The terms and provisions of the DIP Credit Agreement concerning the indemnification of the DIP Administrative Agent and the DIP Lenders shall continue in the Cases, following the conversion or dismissal of the Cases, following termination of the DIP Loan Documents and/or following the indefeasible repayment in full in cash of the DIP Obligations.

Notwithstanding any termination of the Debtors' authority to use the DIP Loans and/or the Cash Collateral pursuant to the terms of the DIP Loan Documents, all liens, security interests,

priorities, rights and remedies provided to the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives or the Prepetition Lenders pursuant to this Final Order shall survive such termination and remain in full force and effect with respect to any DIP Obligations and Prepetition Obligations outstanding on such termination date and any fees incurred by the DIP Administrative Agent, the DIP Lenders, the Prepetition Representatives and the Prepetition Lenders after termination of the DIP Loan Documents in enforcing their rights under this Final Order or the DIP Loan Documents, subject to the Carve-Out, the payment of the Pre-Sale Closing Professionals' Fees (in accordance with paragraph D(vii)) and the Sellers Termination Fee and/or the Expense Reimbursement (in accordance with paragraph 30), in each case, to the extent applicable.

45.    *Nunc Pro Tunc* Effect of this Final Order.    This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

46.    Retention of Jurisdiction.    The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

47.    Other.    Except as expressly provided in Final Order, any and all payments or proceeds remitted, or deemed to be remitted, to the DIP Administrative Agent or the Prepetition Representatives pursuant to the DIP Loan Documents shall be received, or deemed received, by the DIP Administrative Agent or the Prepetition Representatives for their own benefit and the benefit of the applicable Prepetition Lenders free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Sections 506(c) or 552(b) of the Bankruptcy Code.

54

No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except as specifically provided herein. The Carve-Out shall not be available to any party other than those specifically authorized to receive payment therefrom as provided in paragraph 29 hereof.

48.    503(b)(9) Claims.  To the extent that, as of the closing date of the 363 Sale, there is any availability under the Approved Budget as of such date (in accordance with paragraph 18 hereof), such unspent amount (the "Unspent Amount") shall be available to pay allowed claims filed under Section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims"). To the extent that the amount of the 503(b)(9) Claims ultimately allowed by this Court is less than the amount of the Unpaid Amount, the excess funds shall be paid directly to the DIP Agent or the Prepetition Representatives, as applicable.

SO ORDERED by the Court this 6 day of October, 2009.

JUDGE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

RLF1-3442712-1